THE STATE OF CONNECTICUT EX REL. FREDERICK G. EBERLE *vs.* WALTER H. CLARK.

First Judicial District, Hartford, October Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A title *de facto* is sufficient to vindicate the acts of a judge as to third persons and the public, when his right to the office is collaterally questioned; but when it is directly challenged by the State upon an information in the nature of *quo warranto*, the burden is upon him to show that he is a *de jure* officer.

Under the Constitution of this State (Article Fifth, § 3, and Article Twenty of the Amendments) judges of city and police courts are to be "appointed by the General Assembly" and "for terms of two years." *Held:—*

1. That an appointment of the judge of a police court for two years from a certain date "and until his successor is duly appointed and qualified," was an attempt to extend the term beyond the constitutional limit, and was therefore null and void.

2. That the fact that the charter of the city also provided that the judge of its police court should hold office for the term of two years "and until his successor shall be duly appointed and qualified" (15

The State ex rel. Eberle *v.* Clark.

Special Laws, p. 134), was equally ineffective to extend the two-year term prescribed by the Constitution.

3. That while the incumbent of such an office, upon the expiration of his two-year term, might properly hold over in the interest of the public until the appointment of his successor, he would not thereby become a *de jure* officer, nor would such temporary occupation prevent the existence of a vacancy and the filling of the office by the duly-empowered authority.

4. That the purpose of chapter 233 of the Public Acts of 1907, prescribing that while the General Assembly is not in session and the filling of vacancies is not otherwise provided for, the Governor may fill any vacancy, however arising, in all offices originally filled by the General Assembly or either branch thereof, until the third Wednesday of the next session of the General Assembly,—was plainly to have every office supplied with a *de jure* incumbent, and that the Act applied as well to an office occupied by a holdover or *de facto* officer as to cases in which, by reason of death or resignation, the office was left without any incumbent.

5. That the constitutional mandate (Article.Fifth, § 3) requiring judges to be appointed by the General Assembly was not applicable to appointments made to fill vacancies in these offices, and therefore the Act of 1907, in so far as it authorized the Governor to fill such vacancies, was not unconstitutional.

In making an appointment under this Act the Governor is not bound to wait until the vacancy, sure to occur, actually exists, before designating his appointee, but may anticipate that event, provided his own term of office does not expire before the appointment takes effect.

The charter of the city of Hartford (7 Special Laws, p. 434) provided that the associate judge of the police court—who was appointed with and for the same term as the judge—should perform the duties and be vested with all the powers and functions of the judge of said court whenever there should be a vacancy in the office of said judge, and in case of his absence or disability. *Held* that this had reference to vacancies occurring during the term of the judge, but not one to occur upon, or after, the expiration of his term and that of his associate.

In the eye of the law an office is "*vacant*" when it is not filled by a *de jure* incumbent, and the word is so used in the Act of 1907.

The cases of *Harrison* v. *Simonds*, 44 Conn. 318, and *State ex rel. Mathewson* v. *Dow*, 78 Conn. 53, explained and distinguished.

Argued October 9th—decided December 20th, 1913.

INFORMATION in the nature of *quo warranto* to determine the title of the respondent to the office of judge of

the City Police Court of the City of Hartford, brought to and reserved by the Superior Court in Hartford County, *Tuttle, J.*, upon an agreed statement of facts, for the advice of this court. *Judgment advised for the State.*

*Noble E. Pierce* and *John W. Coogan*, for the relator.

*Henry Stoddard* and *William F. Henney*, for the respondent.

THAYER, J. Article Fifth, § 3, of the Constitution of the State, as originally adopted, provides that "the judges of the Supreme Court of Errors, of the Superiour and inferiour courts, and all justices of the peace, shall be appointed by the General Assembly, in such manner as shall by law be prescribed. The judges of the Supreme Court, and of the Superiour Court, shall hold their offices during good behaviour; . . . all other judges and justices of the peace shall be appointed annually." Amendments have since been adopted affecting the manner of appointment and the tenure of office of the judges and justices of the peace here named. The only one affecting the office now in question is Article Twenty, which provides that "judges of the City Courts and Police Courts shall be appointed for terms of two years." This was adopted in 1876. The charter of the city of Hartford provides that there shall be a city police court established and holden in the city of Hartford, and a judge and associate-judge thereof. An amendment of the charter, approved May 14th, 1907, provides "that the judge and associate judge of the city police court within and for the city of Hartford shall each hold office for the term of two years from and after the first day of July next following his appointment and until his successor shall be duly appointed and qualified." 15 Special Laws, p. 134.

In January, 1911, the respondent was appointed, by the General Assembly, judge of said city police court "for the term of two years from and after the first day of July, 1911, and until his successor is duly appointed and qualified." He qualified and accepted the office and has continued to hold and perform its duties until the present time. The General Assembly in 1913 appointed no successor of the respondent, and adjourned *sine die* on the 4th day of June, 1913. On June 24th, 1913, and while the General Assembly was not in session, the Governor, acting under a statute providing that he may fill vacancies, appointed and commissioned the relator judge of said city police court "to fill a vacancy which will occur on the first day of July, 1913, by expiration on that day of the term of office of Walter H. Clark." The relator accepted the appointment, qualified, and demanded possession of the office on July 1st, 1913, which the respondent refused. This action is brought to determine whether, since July 1st, 1913, the respondent has had legal title to the office.

In his plea to the information, the respondent sets out the provisions of the Constitution and city charter, and his appointment by the General Assembly above referred to, as his warrant for holding the office; and, these being admitted, he claims that he may lawfully hold over beyond the fixed term of two years until his successor is legally appointed; and he claims that the relator was not, and that no other person has been, so appointed. The relator claims that these facts do not show a legal title to the office in the respondent. In this proceeding the respondent is bound to establish a legal title. His holding over under this appointment is undoubtedly sufficient, as claimed by his counsel, to constitute him a judge of the court *de facto*. Such title is sufficient to make his acts good as to the public and third persons when his title is not directly in question.

But *quo warranto* calls upon him to show that he is a *de jure* officer. It lies to oust an illegal incumbent from office, not to induct a legal one into it. The burden in such a proceeding is on the respondent to establish a legal right to the office in dispute. *State ex rel. Oakey* v. *Fowler*, 66 Conn. 294, 300, 32 Atl. 162, 33 id. 1005; *State ex rel. Reiley* v. *Chatfield*, 71 Conn. 104, 110, 40 Atl. 922; *State ex rel. Southey* v. *Lashar*, 71 Conn. 540, 545, 42 Atl. 636.

Do the facts show that he is a *de jure* officer? As he bases his title upon his appointment by the General Assembly, we are to inquire whether they had the power to make the appointment which they did make. It is conceded that they could properly appoint the respondent for the constitutional term of two years. The relator claims that it was beyond the power of the General Assembly to appoint for a longer term. That body derives its powers from the Constitution. Article Fifth, §§ 1 and 3, contains a grant of power to the General Assembly to ordain and establish inferior courts, and to appoint the judges thereof in such manner as shall by law be prescribed. Had there been no further provision, this would have included the power to fix the terms of the judges. But the Constitution (Article Fifth, § 3) expressly limits the term to annual elections. Article Twenty of the Amendments declares expressly that city and police court judges shall be appointed for two years. The people of the State thus kept from the General Assembly the power to fix and change the terms of these judges. Any attempt on the part of the latter to fix or extend the term is in excess of their constitutional powers.

If, then, the General Assembly, by the charter of the city of Hartford or by the Resolution appointing the respondent, attempted to extend his term beyond two years, such extension was void. It is clear from the

language of the charter and Resolution that something more was intended to be done than to appoint him for the constitutional term of two years. In his plea he sets up his appointment "for the term of two years from and after the first day of July, 1911, and until his successor is duly appointed and qualified," in justification of his holding over after July 1st, 1913. He thus treats his appointment as being for more than two years. That, manifestly, is precisely what it was intended to be. The first fifteen words fixed the minimum period of his tenure of the office; the remaining words were used to prolong the term until such time as his successor should be qualified. This was to appoint for a term of more than two years, and was in violation of the constitutional provision. *Commonwealth* v. *Sheatz*, 228 Pa. St. 301, 305, 77 Atl. 547; *Commonwealth* v. *McAfee*, 232 Pa. St. 36, 48, 81 Atl. 85; *State ex rel.* v. *Howe*, 25 Ohio St. 588, 595; *State ex rel. Attorney-General* v. *Brewster*, 44 Ohio St. 589, 594, 9 N. E. 849; *Ham* v. *State ex rel. Blackmon,* 162 Ala. 117, 122, 49 So. 1032, 1033; *People ex rel. Bledsoe* v. *Campbell,* 138 Cal. 11, 16, 70 Pac. 419, 420. An appointment of an officer to hold "during good behavior," when the Constitution provides that such officer shall be appointed for a specified time, is void as violating the constitutional provision. *Monette* v. *State,* 91 Miss. 662, 670, 44 So. 989. Article Twenty of the Amendments to the Constitution provides that the appointments of judges of city and police courts shall be for a definite time, when it says that they shall be appointed for the term of two years. No appointment could be more indefinite than one which is to continue until the appointee's successor shall be appointed and qualified. Had the Resolution omitted all reference to the term for two years and appointed the respondent to the office to hold until his successor should be appointed and qual-

ified, it would not have been questioned that such an appointment violated the constitutional provision. Inserting in such a Resolution a minimum term of two years during which the respondent should, in any event, hold the office, would not have brought it within the constitutional provision. Yet this, in effect, is what is done in the Resolution in question. The General Assembly, in making the appointment, were not legislating but were acting merely as an appointing body expressing their choice of a person to fill the office. *McGovern* v. *Mitchell*, 78 Conn. 536, 557, 63 Atl. 433. It has not been claimed in the brief or argument on the part of the respondent that the section of the city charter which provides that the city police judge shall hold office for two years and until his successor is appointed supports the respondent's claim that he is now *de jure* judge of the court. The same considerations are applicable in construing the charter provision which we have stated in considering the Resolution of appointment. If our conclusion is correct, that an appointment for more than two years violates the constitutional provision, a statute or city charter which assumes to authorize such an appointment must also violate it, and affords no authority for making the appointment. The language clearly shows that the purpose of the charter provision was to continue the term beyond the constitutional limit.

We construed a constitutional provision which provided a tenure for a fixed term and until a successor should be qualified, as conferring upon the appointee the same *de jure* title after, as before, the fixed limit. *State ex rel. Morris* v. *Bulkeley*, 61 Conn. 287, 358, 23 Atl. 186. If the Constitution permitted it, the charter provision in question would have the same effect. The history of the statute shows that it was intended to have that effect. The Hartford police court was es-

tablished in 1851, long prior to the adoption of Article Twenty of the Amendments to the Constitution. At the time of its establishment the city claimed to possess the franchise to elect the judges of its municipal courts, upon the ground that those courts were not among the inferior courts referred to in Article Fifth of the Constitution. *Brown* v. *O'Connell*, 36 Conn. 432, 448, and brief of plaintiff's counsel, page 437. The General Assembly so treated them, and by the city charter provided that the judge of the court should be appointed by the court of common council of the city. Public Acts of 1851, Chap. 5, p. 8. They also provided that the judge should hold office for one year and until his successor should be appointed and qualified. After the decision of *Brown* v. *O'Connell*, the charter was amended so as to provide that the judge should be appointed by the General Assembly; but the provision for holding until his successor should be appointed remained untouched. After Amendment Twenty was adopted (October, 1876) another charter amendment was made fixing the tenure at two years and until a successor should be appointed. There has been no change in the provision for holding beyond the fixed term until a successor shall be appointed. As this provision originated when the General Assembly treated this office as one not included among the inferior courts referred to in the Constitution, it cannot be supposed that, when the provision was originally enacted, they were providing for a mere holding over by the incumbent as a *locum tenens* or officer *de facto* when they had, as they supposed, full authority to extend his term as a *de jure* officer. They would be more likely under those circumstances to clothe him with the full *de jure* title. The fact that the provision remained untouched by the subsequent amendments of the charter has little significance, because the intention is to be sought from the circum-

stances under which the original enactment was made. We think it is clear that the purpose of the charter from the beginning was to give to the appointee a continuous term until his successor should be appointed and qualified. Such an appointment would constitute him an officer *de jure*, and as such he would be entitled to the salary of the office as well after as before the termination of the fixed term. This being the construction which must be placed upon this provision of the city charter, it is void, as already stated, as violating the constitutional provision that the judicial term of these officers shall be two years. It follows that the respondent has failed to show a *de jure* title to the office in dispute under the charter and Resolution of appointment.

The claim of the respondent, that it was his right and his duty to hold over and exercise the duties and functions of the office after the expiration of his term until his successor should be appointed, may be conceded. The public interest requires that such officers shall hold over when no successor is ready and qualified to fill the office; otherwise important public offices might remain vacant, to the public detriment, in the absence of statutes providing for the filling of the vacancies, or through the neglect of the appointing authorities to fill them. The rule has grown out of the necessities of the case, so that there may be no time when such offices shall be without an incumbent. But such holdover incumbent is not a *de jure* officer. He is in for no term, but holds the office only temporarily until the vacancy can be filled by competent authority, and his incumbency does not prevent the filling of the office by the authority duly authorized to fill the vacancy. He merely performs the functions of the office until a duly-qualified appointee to it shall appear, and then is bound to yield the office to such appointee. If, then, the relator was duly appointed and qualified when he demanded the

office, the respondent should have surrendered it to him. This brings us to consider whether the relator has a good title to the office.

The statute under which the Governor acted in appointing the relator (Public Acts of 1907, Chap. 233, p. 835) reads as follows: "While the general assembly is not in session and when provision for filling such vacancies is not otherwise made, the governor may fill any vacancies, however arising, in all offices originally filled by the general assembly or either branch thereof, or by the governor, with the advice and consent of the general assembly, or either branch thereof, until the third Wednesday of the next session of the general assembly, and until a successor is elected, or appointed, and qualified. He may fill any vacancy in any office to which he has power of appointment."

It is the respondent's claim that in so far as this statute purports to give the Governor power to appoint judges of the various courts named in § 3 of Article Fifth of the Constitution, whose appointment is therein granted to the General Assembly, it is void as contravening that constitutional provision. It is also claimed that, if the statute is not void, no vacancy existed; and that, if one existed, other provision for filling it had been made, so that the statute was inapplicable to the situation.

In support of the claim that no vacancy existed, it is said that, although the respondent was not a *de jure* officer, it was his duty to remain in possession of the office after his fixed term had expired until a duly-qualified officer appeared, and that the provision of the city charter which has been referred to, and the Resolution of appointment passed in conformity to it, conferred upon him at least a color of title, so that his possession of the office was that of a *de facto* officer at least; and it is claimed that an office is not vacant when

in possession of a *de facto* incumbent. The word "vacant" or "vacancy," as applied to an office, is not to be taken in a strict technical sense in every case. In the eye of the law an office is vacant when it is not filled by a *de jure* incumbent. It may be thus vacant when it is occupied by one who is not a *de jure* officer, as by a mere usurper. We think that the word "vacancies" is used in this sense in the statute in question, not as indicating that the office is physically vacant, but that it is not occupied by a *de jure* officer. It provides that the Governor may fill any vacancy, however occurring. The plain purpose of the statute is to have every office supplied with a *de jure* officer, and applies as well to an office occupied by a usurper or a holdover or *de facto* officer, as to cases in which, by death or resignation, the office is left without any incumbent.

The case of *Harrison* v. *Simonds*, 44 Conn. 318, 319, is cited as supporting the claim that an office is not vacant when there is a *de facto* incumbent. The court makes use of that language in that case. It was a case of mandamus brought to compel a board of (claimed) *de facto* trustees to call a special meeting to fill vacancies in the offices which they were holding by virtue of an election held, as the plaintiff claimed, without legal warning of the meeting. The real question sought to be litigated was whether the trustees were legally elected. If they were, there was no vacancy, and it was improper to order a special meeting to be held. The court held that the title could not be tried on mandamus, but must be determined upon a writ in the nature of *quo warranto*, and refused the writ. In discussing the case the court made use of the language upon which the respondent relies. Such a ruling was not necessary to the determination of the case, for, as the court stated, an election could not be ordered unless it appeared that there was a vacancy. It did not ap-

pear that there was a vacancy, and one could only be made to appear upon a *quo warranto* proceeding. The statement relied upon, namely, that if it were conceded that the trustees were only *de facto* officers there would be no vacancy, was merely *obiter*. The office was full, *de facto*, being occupied by trustees who were in under color of an election to their offices. Mandamus will lie to restore one legally entitled to an office from which he is ousted by a mere usurper, but will not lie where the occupant is in under color of title. *State ex rel. Comstock* v. *Hempstead*, 83 Conn. 554, 557, 558, 78 Atl. 442. On mandamus it may properly be said that the office is not vacant when filled by a *de facto* officer; and it could properly be so treated in an application for a writ of mandamus under the peculiar circumstances of that case.

It was suggested upon the argument that at the time the relator was appointed the respondent's term had not expired, and so no vacancy existed in the office. While the appointment was dated the 24th of June, it recites that the appointment is to fill a vacancy to occur on the first day of July by the expiration on that day of the term of office of the respondent, Clark. The appointment anticipates the event, but is not to become effective until the vacancy occurs. The appointing authority was not bound to wait until the vacancy actually existed before designating his appointee. Expediency and convenience required that the appointment should be so made that when the respondent's term ended the successor might be qualified and prepared to take the office and enter upon its duties at once. While it is well settled that an officer or appointing body clothed with authority to appoint to a public office cannot, in the absence of express authority, make a valid appointment thereto for a term which is not to begin until after the expiration of ·the term of such

appointing officer or body (*State ex rel. Morris* v. *Sullivan*, 81 Ohio St. 79, 92, 90 N. E. 146; *People ex rel. Sweet* v. *Ward*, 107 Cal. 236, 242, 40 Pac. 538; *State ex rel. Bownes* v. *Meehan*, 45 N. J. L. 189, 191), it is equally well established that such officer or appointing body may make a prospective appointment to fill a vacancy which is sure to occur in a public office within the time during which the appointing officer or body, as then constituted, will have authority to fill the vacancy. *State ex rel. Childs* v. *O'Leary*, 64 Minn. 207, 210, 66 N. W. 264; *People* v. *Fitzgerald*, 180 N. Y. 269, 274, 73 N. E. 55. As the vacancy in question was sure to occur during the Governor's term of office, he might, in the manner which he adopted, properly make the appointment, in anticipation of the event.

A provision of the Hartford city charter provides that "the associate judge [of the city police court] shall perform the duties and be vested with all the powers and functions of the judge of said court whenever there shall be a vacancy in the office of said judge and in case of his absence or disability." 7 Special Laws, p. 434. This is relied upon by the respondent as showing that provision for filling the vacancy in question has been "otherwise made" than by the statute under which the Governor acted. The charter shows that the judge and associate judge are appointed for the same term; the same language applying to each. If the judge is not thereby empowered to act beyond the statutory term of two years, it cannot be that the associate judge is. The apparent purpose of this section of the charter is to provide an associate judge, who, during the term for which both are appointed, may act in cases in which the judge is disqualified and in case of his absence or disability, and, in case of his death or removal from office, may perform the entire duties of it for the remainder of the term or until his successor

shall be appointed. It was not contemplated that the associate should fill a vacancy caused by the expiration of the judge's term. The vacancy which he is to fill is, in the language of the charter, "a vacancy in the office of said judge." This shows that it was merely a provision for a vacancy in the term held by the judge and not one to occur in the office at any time, near or remote, after the expiration of his term.

The remaining question as to the relator's title involves the validity of the statute under which he was appointed. It is claimed to be unconstitutional so far as it authorizes the Governor to fill vacancies in judicial offices. The constitutional provision claimed to affect the question is quoted above. From this (Article Fifth, § 3) it appears that the judges of the courts therein named, which include the city and police courts, are to be appointed by the General Assembly. This provision we have held to be mandatory. *Brown* v. *O'Connell*, 36 Conn. 432, 436, 448. But the same section provides the terms for which the judges of the different courts shall thus be appointed. This also is mandatory, as we have already held in this opinion, and the terms cannot be extended or shortened by the appointing authority. No provision is made in this section, or elsewhere in the Constitution or its amendments, for the filling of vacancies in these offices. The tenure of office is fixed and provision is made for the original appointment to these terms by the General Assembly. But vacancies must inevitably occur in these offices at times when the General Assembly is not in session, and for the filling of these no provision is made. We might attribute this to accident or oversight, had not the same omission been made in other Articles and sections of the Constitution relating to other important offices, the terms and manner of election or appointment to which are provided for. Thus it is provided that the

State Treasurer shall be chosen by the electors; that the Secretary of State shall be chosen in the same manner; and that the Comptroller shall be annually appointed by the General Assembly. The Comptroller is now elected by the people. No provision was or is made in the Constitution for filling vacancies in these important offices. In the case of some offices, the terms and appointment to which are provided for, provision is made for the filling of vacancies. Thus it is provided in the original Constitution that sheriffs shall be appointed by the General Assembly and hold office for three years; and it is also provided that, if a sheriff shall die or resign, the Governor may fill the vacancy occasioned thereby, until the same shall be filled by the General Assembly. It thus appears that the fact that vacancies were likely to occur in these offices was in the minds of the framers of the Constitution. The public inconvenience which must result if vacancies should occur and continue until the next stated session of the General Assembly, or until another annual election by the people, was as apparent to them then as it is to us now, although the inconvenience may now be greater, for the reason that the sessions of the General Assembly and our elections are both now biennial. And they must have realized, also, the great public expense and inconvenience which would result were the General Assembly to be called together to fill vacancies which might occur in offices which the Constitution provided should be filled by them, and special elections ordered to fill vacancies occurring in elective offices. Did they intend to create this public inconvenience, in whichever way resulting, by the provision which we are considering? It is more creditable to their wisdom and public spirit to believe that they intended no such thing, but that their purpose was to fix the terms of the offices and to provide by what appointing authority the

terms thus created should be filled. We think that this was their sole purpose, to fix the terms and provide for the filling of the terms. The filling of temporary vacancies caused by death, resignation, removal, or other cause, and the supplying of a substitute for a judge who is disqualified by interest or sickness, or is temporarily absent, are matters not dealt with or intended to be dealt with in this provision. The incumbents appointed to fill such vacancies, or to supply the place of a disabled or disqualified judge for a short period, are, while acting, judges of the court (*State* v. *Carroll*, 38 Conn. 449, 454), but they are mere *pro tempore* judges. They are not appointed to fill out the constitutional term which has been vacated either permanently or temporarily by the constitutionally appointed judge, but to act only until the General Assembly shall at its session make a new appointment for the term, or until the disqualified or disabled judge shall become qualified to act. Appointments to fill these vacancies could not be made annually, as appointments under the original Constitution were required to be made, nor biennially at the regular sessions of the General Assembly, as now provided for. The public inconvenience which would result from convening the General Assembly to make these appointments would be so great as to render it impossible that they should be so made, and to render it impossible to believe that the framers of the Constitution or the people who adopted it intended that these appointments should be made by the General Assembly.

That this is the view taken by the General Assembly immediately after the adoption of the Constitution and ever since, appears abundantly in the statutes and city charters which they have since enacted. Continuously since that time they have by their enactments provided that the Governor or some appointing authority other

than the one which the Constitution designates to make the appointments for fixed terms should fill vacancies in these judicial offices, and in other offices the terms of which the Constitution declared should be filled by the General Assembly or by election of the people, and these enactments have been acted upon and appointments to fill vacancies have been made under them. Thus, in the absence of one of the judges of the County Court (the statute requiring that it be held by two), it is provided in Title 21, § 17, of the Revised Statutes of 1821, that the remaining judge may call in one of the justices of the peace of the county to fill the vacancy. Section 39 of the same Title provides that when all the judges of that court are disqualified, the clerk of the court may call in three justices of the peace (drawing them by lot from the names of the justices of the peace of the town in which the court is sitting) to fill the vacancies and try the case in which the judges are disqualified. Again, in the same Revision, Title 28, § 6, provides that vacancies occurring in the office of Treasurer, Secretary of State, and Comptroller, unless the same occur during the session of the General Assembly, shall be filled by the Governor. Of these offices the Constitution provided that the first two should be elective and the last should be filled by the General Assembly, as before stated. It is useless to multiply particular instances where this has been done. In addition to those already given, CHIEF JUSTICE BUTLER, in State v. Carroll, 38 Conn. 449, gives other and more modern instances where the same course was pursued. An examination of the Public and Private Acts will show that the practice has been continuous to the present time. In 1887 a Public Act was passed, to be in effect until the next session of the General Assembly in 1889, providing that any vacancy that should occur in any office originally filled by the General Assembly or either branch thereof,

or by the Governor with the advice and consent of the senate, might, in the absence of other provision, be filled by the Governor until the first Wednesday in February, 1889. General Statutes (1888), § 429. A similar provision, except that its operation was unlimited as to time, appears in the General Statutes of 1902, § 82, which was amended by the Public Acts of 1905, chapter 262, p. 461, which was in turn amended by the statute (Public Acts of 1907, chapter 233, p. 835) under which the relator was appointed. It is a matter of common knowledge, and a subject for judicial notice, that these statutes have been acted upon, and appointments have repeatedly been made under them, from the beginning. Not only have judicial officers from the highest to the lowest been appointed to fill vacancies pursuant to these statutes, but vacancies in other offices have thus been filled by other appointing authority than that indicated by the Constitution for filling the original terms of such offices. This contemporaneous construction of Article Fifth, § 3, of the Constitution, acquiesced in and followed for nearly a century, is strong proof of the correctness of our interpretation of that section, and confirms us in our belief that it is the proper one. We hold, therefore, that the Constitution contains no mandate that vacancies in these offices shall be filled by the General Assembly.

When we say that this construction has been acquiesced in from the beginning, we should mention that it was, in a sense, called in question in a case growing out of an appointment made by the General Assembly in 1903. They appointed a judge of the City Court of New Haven "for the unexpired portion of the term" of his predecessor. The appointee claimed that they had no power to appoint for less than the constitutional term of two years, and endeavored, as against a new appointee, to hold the full two-year term. The case

went off on another point, and it was found unnecessary to determine this question. *State ex rel. Mathewson* v. *Dow,* 78 Conn. 53, 60 Atl. 1063. It is to be noticed that the appointment made in that case was not to fill a mere temporary vacancy in the office, but was for the unexpired portion of a term which the General Assembly had full constitutional authority to fill. The question now involved, while related to, is not the same as, the one which was raised in *State ex rel. Mathewson* v. *Dow,* 78 Conn. 53, 60 Atl. 1063.

The objection to the validity of the relator's appointment has been that, under § 3 of Article Fifth of the Constitution, the General Assembly was bound to appoint to fill the vacancy, and could not delegate this delegated power to the Governor. If by that section of Article Fifth the people did not delegate this power to the General Assembly, as we now hold, the ground of the objection disappears. But the question remains, could the vacancy be legally filled by the Governor?

Since the duty to fill these vacancies is not imposed upon the General Assembly by the Constitution, the statute in question was not a delegation of such delegated power. Who, then, in the absence of a designation in the Constitution, is to fill these vacancies? Manifestly the appointing power must be fixed by statute unless fixed by the Constitution.

The power to ordain and establish inferior courts is conferred upon the General Assembly by § 1, Article Fifth, of the Constitution. Can it be doubted that, as a part of the legislative power thus conferred, they would have had, but for the provisions of § 3, the power to establish and fix by statute the terms of the judges of those courts, the manner of filling all vacancies, and the authority by whom the judges should be appointed and the vacancies filled? We think not. This power is an essential part of the power there conferred. Section 3

limits that power by fixing the terms and providing by whom the appointment to these terms shall be made. As to the remaining powers, § 3 is silent. The General Assembly, therefore, under § 1 of Article Fifth had the power, and it was their duty, to provide by statute for the filling of the vacancies which might occur, and to designate the authority which is to fill them. The statute under which the Governor appointed the relator was, therefore, not unconstitutional, so far as it applies to judicial offices and conferred upon the Governor authority to make the appointment which he did.

It follows that the relator was duly appointed and was *de jure* judge of the city police court of the city of Hartford when he demanded the office from the respondent, and that the respondent should have surrendered it to him upon that demand.

The Superior Court is advised to render judgment for the State, and that the relator recover his costs.

No costs in favor of either party will be taxed in this court.

In this opinion the other judges concurred.