Jones, J.
Under the conceded facts the respondent must establish his tenure under the appointment of May 27, 1915, which was for a term of four years from June 17 following. The relator contests Cowen’s title to office for four reasons: First, that the Cass highway law by expressly repealing the highway laws in force at the time of Cowen’s appointment on May 27, 1915, superseded the former law, and that the office was thereby abolished; second, that by virtue of the Cass highway law the state highway commissioner is subject to removal at the pleasure of the governor; third, that Cowen by his acceptance of the unconfirmed appointment of August 31, 1915, abandoned his former tenure and is now estopped from claiming otherwise; and, fourth, that an appointment by the governor may not be made in anticipation of a vacancy.
*281 Did the Cass highway law abolish the office of state highway commissioner ?
The two earlier appointments of the respondent were made under the highway laws in force at the time. (Section 1178 et seq., General Code; 102 O. L., 333.) The Cass highway law (JOó O. L., 574) expressly repealed the forme-- Highway laws and became effective by its terms on September 6, 1915. From the fact that a reappointment of Cowen was made on August 31, 1915, and that the appointee qualified under that appointment, it is conceivable that both the governor and the appointee apprehended that a new appointment should be made to conform to the provisions of the Cass highway law. However, it is manifest that after the rendition of opinion by the attorney general, in answer to Cowen’s letter of September 7, 1915, to the effect that a reappointment was not required under the Cass highway law, the appointing power considered his appointment of August 31, 1915, as ineffectual and void, since the record discloses that he caused an entry to be made revoking that appointment. While the Cass highway law, which is in effect a codification of the highway laws of the state, changes the former law in many respects, there is substantially no change with reference to the appointment, term, salary and duties of the state highway commissioner. With reference to the latter the reenacted statute is substantially in haec verba as it existed prior thereto. While the Cass highway law expressly repealed the former highway laws it neither in terms abolished the *282 office in question nor provided for a supersession of the duties thereby imposed.
The construction placed upon the Cass highway law by the relator would be tantamount to the abolishment of the officer, leaving the office intact. Had the legislature in passing the Cass highway law been content to rest upon the repeal of the former law, undoubtedly the office would have been abolished; but, when, although expressly repealing the existing statute, it at the same time reenacted the former sections of the repealed law relating to the state highway department and to the state highway commissioner, and continued the latter in force, with the same title, tenure and salary, and with substantially the same functions attached to the office as it theretofore possessed, expressed in substantially the same identical terms, it thereby neutralized the repeal and continued the .office in force. (1 Lewis’ Sutherland on Statutory Construction, 2 ed., Section 238.) In the construction of legislation of this character the legal principle has become well established that when the amendatory or reenacted law substantially reenacts the existing law, the latter is held to be in effect continuous and undisturbed, and in contemplation of law the amendatory measure is not a repeal but merely a reaffirmance of the former law. In re Allen, 91 Ohio St., 315, and In re Hesse, 93 Ohio St., 230.
The question is, What was the legislative intent? “To abolish an office the intention of the competent authority to abolish such office must be clear.” 29 Cyc., 1368, and authorities cited.
*283 In Kirker v. Cincinnati, 48 Ohio St., 507, it appears that by legislative action the board of public improvements of Cincinnati was abolished and the board of city affairs established, but clothed with the same functions as the former board of public improvements. In a per curiam the court said: “The act did not in a legal sense create a new office. The board of city affairs was clothed with the same functions as the board of public improvements. If then, as can hardly be questioned, the identity of an office is to be determined by the functions that belong to it, the board of city affairs is, in law, the same as the board of public improvements.”
Section 171 of the Cass highway law (106 O. L., 623) provides that the governor shall appoint a state highway commissioner who shall serve for the term of four years, “unless sooner removed by the governor.” It is contended by the relator that this clause of the section gives the governor the right to remove the commissioner at pleasure. In view of our recent constitutional provision, and laws also recently enacted to conform thereto, we cannot give that clause the construction claimed. The clause, “unless sooner removed by the governor,” does not explicitly grant the power of removal, but rather recognizes its constitutional and statutory exercise. In 1912, by an amendment to the constitution, Section 38, Article II, was adopted as follows:
“Laws shall be passed providing for the prompt removal from office, upon complaint and hearing, of all officers, including state officers, judges and members of the general assembly, for any mis *284 conduct involving moral turpitude or for other cause provided by law; and this method of removal shall be in addition to impeachment or other method of removal authorized by the constitution.”
Pursuant to this constitutional amendment the legislature on April 16, 1913, passed an act (103 O. L., 851) providing for the removal of officials for the causes and by the methods provided in that act, and as the Cass highway law was passed on May 17, 1915, it was undoubtedly the intention of the legislature that removals should be made under the existing law and constitution and not at the pleasure of the governor. This construction should be adopted in order to harmonize this section of the Cass highway law with the provisions of the constitution and existing laws relating to the removal of officials.
It is contended that the governor has no authority to anticipate a vacancy, and that he can appoint only after a vacancy actually occurs. The question, therefore, arises whether the governor on May 27 could legally appoint Cowen to fill a vacancy which would not occur until June 16 following. Section 12, General Code, is as follows:
“When a vacancy in an office filled by appointment of the governor, with the advice and consent of the senate, occurs by expiration of term or otherwise during a session of the senate, the governor shall appoint a person to fill such vacancy and forthwith report such appointment to the senate. If such vacancy occurs when the senate is not in session, and no appointment has been made and confirmed in anticipation of such vacancy, the *285 governor shall fill the vacancy and report the appointment to the next session of the senate, and if the senate advise and consent thereto, such appointee shall hold the office for the full term, otherwise a new appointment shall be made.”
In the absence of laws prohibiting or expressly providing that appointments of this character may be made only after the vacancy occurs, it has generally been held that the appointing power has. full authority to anticipate vacancies in its appointments. This legal principle, however, is limited, in that such vacancies, whether by resignation or .expiration of term, must occur during the life of the appointing power. The latter cannot saddle upon its successors appointees whose official terms are to begin thereafter. If the anticipated vacancy occurs during the official tenure of the appointing body (in the instant case the governor and the senate), in that event such body has full authority to malee such appointment if it is not otherwise lawfully forbidden. (Mechem on Public Offices, Section 133; State, ex rel. Ives, v. Choate, 11 Ohio, 511; State, ex rel. Eberle, v. Clark, 87 Conn., 537; State, ex rel. Childs, v. O'Leary, 64 Minn., 207, and State, ex rel. Whitney, v. Van Buskirk, 40 N. J. L., 463.) Furthermore, it would seem that Section 12, General Code, above quoted, recognizes the legal power of appointment and confirmation in anticipation of vacancies. The language there used is that if “no appointment has been made and confirmed in anticipation of such vacancy,” the governor may fill the vacancy and report the appointment to the next session of the senate.
*286 Whether Cowen abandoned his official tenure under the appointment of May 27, 1915, is a question of fact which must be gleaned from the record. Under that appointment he gave a valid bond in the sum of $10,000 and duly qualified thereunder. However, under his later appointment of August 31, 1915, he gave a new bond in the sum of $20,000 for a term beginning September 4,1915, and ending September 3, 1919. The Cass highway law became effective by its terms on Monday, September 6, 1915. Evidently the official action and the execution of the bond were undertaken under the belief that the act became effective on September 4, 1915, the ninety-day referendum period after the act had been filed with the secretary of state. However that may be, this record clearly discloses that Cowen did no act explicitly disavowing his former tenure, or that could be construed otherwise than as an honest endeavor to conform to official action while maintaining his legal right to his May appointment if that should prove to be valid.
As affecting the question of abandonment, the attitude of Cowen, the governor, and his official adviser, the attorney general, taken shortly after the time the Cass highway law became effective, should receive the highest consideration. ' As heretofore stated that law took effect on Monday, September 6, 1915. On the next day the respondent directed a letter to the attorney general in which he asked specifically whether the Cass highway law created a new highway department effective September 6, 1915, and, furthermore, *287 whether all the officials and employes of the state highway department must be appointed under the new law. The fact that Cowen took this early method of obtaining his official status shows that he had no intention of abandoning his official status under his appointment of May 27, 1915, if it proved to be valid. And the fact that his official adviser, the attorney general, on September 21, 1915, advised him that the office of state highway commissioner- was not abolished, and that a new highway department was not created, discloses beyond peradventure that both the governor and his appointee from that time on did not regard the office as abolished, and consider the appointment of August 31,' 1915, invalid; because after this opinion was rendered, and undoubtedly in conformity thereto, the August appointment was revoked by the governor. The effect of Cowen’s execution of a new bond in conformity to the requirements of the new law, and for the new term provided in the latter appointment, cannot ipso facto be held to act either as an abandonment or as an estoppel to claim under the May appointment, under the facts proven in this case.
Under the facts stipulated and conceded in the pleadings we therefore hold that the respondent is entitled to the office in question, and judgment for his ouster therefrom is refused.

Judgment of ouster refused.

Nichols, C. J., Wanamaker, Newman, Matthias, Johnson and Donahue, JJ., concur.