THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MAURICIO DECÓS CÁCERES, Defendant and Appellant.

No. 9917. Argued May 20, 1943.—Decided June 1, 1943.

*Luis Mercader* for appellant. *R. A. Gómez, Prosecuting Attorney (Fiscal)*, for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

From the evidence introduced in this case by the prosecution before the District Court of Arecibo it appears that the appellant, Mauricio Decós, arrived at the town of Camuy driving a public automobile and stopped his vehicle in front of the public square. At that moment an insular policeman approached him, ordered him to stop the car and, accompanied by another policeman, arrested appellant, taking him to the police station where he was asked for the keys to the trunk of the car to search it "because they suspected" and because "they had confidential information that he carried rum there." Appellant at first refused to give them the keys, and later asked to be taken to the presence of the municipal judge, which they did, and this officer, as the policeman testified, said to him, "Look here, if you have the key, give it to them as with or without a search warrant these policemen are ready to open it. Otherwise they will make an affidavit to obtain an order from me to open the car." One of the two policemen who took the appellant to the police station testified that he had no order whatsoever for his arrest, and that the appellant had committed no offense whatsoever in his presence, but that "policeman García could explain why he did arrest him." Said policeman García was the one who ordered the automobile of the appellant to be stopped, but in spite of this he did not tes-

142

tify at the trial. After the statement made by the municipal judge, appellant looked for the key to the trunk of the car, and handed it to the police, who, upon searching the car, found a cask and two glass containers filled with rum. A complaint was filed against Decós for violation of §§21 and 77 of the Spirits and Alcoholic Beverages Act (Act No. 6 of 1936, Special Session), and the lower court on appeal found the defendant guilty and sentenced him to fifty days' imprisonment in jail.

 The first assignment of error in support of the present appeal is the following:

"In dismissing defendant's petition to strike the evidence, after the defendant had•been arrested and his automobile searched without his having committed any offense or violation whatsoever in the presence of the police, and without the policemen having an order to authorize them to proceed in such an arbitrary way."

It is desirable to state that the defendant, before the trial, filed a motion with the municipal court asking for the suppression of the evidence illegally seized, and that he also reproduced the motion before the lower court, where a stipulation was entered into to the effect that the court would decide it after the case was heard on its merits. The court dismissed it.

The *Fiscal* of this court contends that the search made in this case was legal because "everything was done voluntarily by the defendant, who gave the police the key to the trunk of the automobile he was driving," and that, therefore, there was no "violation of any constitutional right of the defendant." Nevertheless, the *Fiscal*, when analizing the evidence, admits in his brief that the police *"suspecting* that the law was being violated, ordered the defendant to stop, etc."

In effect, from all the evidence of the prosecutor, the only thing that appears is that, by reasons, facts or motives not expressed by the two policemen who testified, another policeman, García, who did not testify, arrested the defend-

ant and without an order to that effect, took him to the police station, where they asked him to give them the key so that they could search the automobile and that afterwards, upon being threatened by the municipal judge that with or without a search and seizure warrant the police would open the trunk, the defendant delivered the key.

We are of the opinion that to sanction this wholly arbitrary and illegal proceeding merely because the defendant finally delivered "voluntarily" the key to the automobile, would be to render ineffective the guarantees consecrated by the Organic Act as well as by our laws.

In the first place, the arrest carried out was illegal. There is nothing in the prosecutor's evidence to show that the defendant had committed any offense whatsoever when arrested by policeman García and taken to the police station. Section 116 of the Code of Criminal Procedure expressly provides for the cases in which a peace officer may make an arrest without any order to that effect. There is nothing in the record to show that the appellant had committed or intended to commit an offense in the presence of the policeman or that he had committed a felony or that there were any reasonable motives on which to base a belief that he had committed a felony. The only indication of a motive for the arrest is that given by the defendant in his testimony where he said that policeman García, upon arresting him, said that he was making "an investigation as to a stolen tire," and ordered him to open the trunk of the car. When the defendant refused to do it, he took him to the police station and it was there, where under the above described circumstances, that he delivered the key. Policeman Benítez testified that the defendant was ordered to open the trunk "because they suspected," but he did not specify in what said suspicions consisted nor what they referred to.

In relation to the arrest of a person and the search of his automobile under circumstances analogous to those of

the case at bar, Cornelius says in his work "Search and Seizure," at page 96, that the offense is not committed within the presence of the officer " . . . in cases where intoxicating liquor is concealed from the view of the officer in an automobile or on the person, and in many other cases where the commission of the offense itself is not known to the officer prior to the arrest. In all such cases, an arrest made under these circumstances is illegal and the evidence procured by an illegal search and seizure incidental to such arrest is not admissible in evidence in those courts in which the exclusion doctrine obtains."

Even though *People* v. *Guzmán*, 34 P.R.R. 111, was a case brought under the National Prohibition Act, we consider the principles set forth therein as applicable to the instant case. In the cited case the contention of the appellant was that under no circumstances can an automobile where liquor is illegally transported or which is used in bootlegging of said liquors searched without a judicial search and seizure warrant. The evidence in said case as stated in the opinion, at page 114, was the following:

"In this case the evidence showed that the Government's agents had reasonable grounds for searching the automobile without warrant. The automobile was being driven over a public road at an excessive rate of speed when it passed the place where two policemen were stationed. *They knew that liquors were being transported between Río Grande and Luquillo and this, together with the excessive rate of speed of the automobile, which of itself was a violation of the local law governing the use of motor vehicles led the said agents reasonably to believe that. the automobile was transporting liquors and caused them to follow it in another automobile, as a result of which they were able to stop and search the automobile,* finding 36 bottles of 'Three Star Hennessy brandy, of which 12 were in a small bag on the floor of the rear part of the car, each bottle being enveloped in straw, and the rest of the bottles under the rear seat of the automobile.' "

There is a somewhat subtle argument that might be made against giving the familiar holding-over clause the meaning we have attributed to it. The argument is that "until his successor is appointed and qualified" means until his successor is appointed either by recess appointment or by a duly confirmed fixed-term appointment; that the Governor could therefore have validly given Orraca a recess appointment on April 26, thus displacing González; that a vacancy therefore exists as of April 26; and that the entire theory herein espoused therefore falls of its own weight, as the net result reached by such reasoning, that a vacancy exists when an incumbent holds over under a specific holdover clause, would be at odds with our previous conclusion that when the holdover clause is present, an incumbent holding over has legal title to the office and that consequently no vacancy exists in the office. Our answer must be that this is reasoning in a circle which in itself demonstrates that the premise on which it is based—that "until his successor is appointed and qualified" includes recess as well as permanent appointments—cannot be accepted. We have found no authority deciding or intimating that a holding over clause is directed to successor recess appointments as well as to permanent appointments. On the contrary, there is implicit in the cases we have examined the doctrine that this particular clause has reference only to permanent appointments. Indeed, we do not understand that the petitioner argues to the contrary. And this must necessarily be so, as the Governor draws his power to make recess appointments from a wholly different clause for a wholly different purpose. In contrast, provision for holding over, generally speaking, is found *immediately* after the term of office—the incumbent, the statutes read, shall hold office for a period of four years, and until his successor is appointed and qualified. We conclude that the appointment referred to in such a specific holding-over clause refers only to the permanent appointment of a successor.

It must be confessed that the cases in other jurisdictions rely so heavily on local peculiarities of statute and constitution and the difference between elective and appointive officials that it is difficult to determine how persuasive they are in our situation. In addition, the authorites are divided on the particular question before us. Nevertheless, we believe it profitable to examine some of the cases.

*Alcorn* v. *Keating,* 181 A. 340 (Conn., 1935), comes to the same conclusion which we have reached. That case involved the appointment of a member of the state Board of Finance and Control. The court says at pp. 341, 42:

"In the primary and technical sense 'vacancy' as applied to an office or position, signifies a state of being not filled or occupied by a present incumbent. It is not, however, in every case to be taken in this strict sense. It may appear that in order to constitute the vacancy referred to in a constitutional or statutory provision and authorized to be filled in a manner therein prescribed, the office need not be physically vacant but it is enough that it is not occupied by a de jure officer. The term 'vacancy', when so used, 'applies as well to an office occupied by a usurper or *a holdover or de facto officer* as to cases when by death or resignation the office is left without any incumbent.' *State ex rel. Eberle v. Clark,* 87 Conn. 537, 547, 89 A. 172, 175, 52 L.R.A. (N.S.) 912." (Italics ours.)

The court then quotes with approval from *State ex rel. Lyons* v. *Watkins,* 89 A. 178 (Conn., 1913), the following language at p. 342:

" . . . the question is whether the old incumbent continues to hold the office as a portion of his original term or only continues in the office as a mere locum tenens or officer de facto. In some of these cases it is decided that the holdover provision creates a new and contingent term; in others that it merely authorizes the old officer to temporarily fill the office, under his former qualification, as a locum tenens; and in others it is held that it continues the original term until a successor is appointed. When held that the old term continues, it is generally held that there is no vacancy to be filled by the authority having the power to fill vacancies; and, where the incumbent holds over as a temporary holder of the office, it is gen-

erally held that a vacancy exists which may be filled by the authority empowered to fill vacancies. In all the cases it is a question of construing the provision authorizing the holding over, and this is affected by the nature of the office to be filled (i.e., whether elective or appointive), the language of the particular statute, and the circumstances of the particular case.''

The court then points out at pp. 342, 3, the two phases of the rule:

''It is generally held that where the provision is that the incumbent shall hold until his successor is elected or appointed and qualified, without other provisions or considerations modifying or affecting it, there is not a vacancy to be filled in the manner provided for the filling of vacancies by other than the power and in the manner originally authorized to elect or appoint.

''* * * * * * *

''In the absence of a definite provision that an officer shall hold not only for the specified term but also until his successor is elected or apointed and qualified, while the incumbent is held to be entitled to hold over until a successor is chosen, he is generally regarded as holding de facto only, so that his occupancy of office does not prevent the existence of a vacancy to be filled by the authority duly empowered to do so. *State ex rel. Lyons* v. *Watkins, supra,* 87 Conn. 594, pages 598, 600, 89 A. 178; *State ex rel. Eberle* v. *Clark, supra,* 87 Conn. 537, page 547, 89 A. 172, 52 L.R.A. (N.S.) 912; 46 C. J. pp. 968, 1058, and cases cited; 22 R.C.L. p. 598; Mechem, Public Officers, §129, p. 64.''

*Heyward* v. *Long,* 183 S. E. 145 (S. C., 1935, deals exhaustively with this problem, the court asserting at p. 151, ''The general rule is that one who holds over after the expiration of his legal term, where no provision is made by law for his holding over, is commonly regarded as a de facto officer. 46 C. J. 1058; *State* v. *McJunkin,* 7 S. C. 21; *Williams* v. *Boynton,* 147 N. Y. 426, 42 N. E. 184; *In re Lieutenant Governorship,* 54 Colo. 166, 175, 129 P. 811; *State* v. *Watkins,* 87 Conn. 594, 89 A. 178, *People* v. *Beach,* 77 Ill. 52; *In re Krickbaum's Contested Election,* 221 Pa. 521, 70 A. 852.'' See also, *Smith* v. *City Council of Charleston,* 17 S. E. (2) 860, 63 (S. C., 1941).

In *People ex rel. Sergel* v. *Brundage,* 129 N. E. 500 (Ill., 1920), the court held, in connection with the election of the president of the board of trustees of a sanitary district, that (p. 503) "There is no technical meaning of the word 'vacancy', but the rule of the common law, and where not changed by statute, is that there is a vacancy when the term expires. *Badger* v. *United States,* 93 U. S. 599, 23 L. Ed. 991. In many cases statutes provide that an officer may hold over after his term until his successor is elected and qualified, and the act contains such a provision as to the trustees but there is none as to the president. Where an officer is not authorized by statute to hold over, his rights, duties, and authority as a public officer cause, and not being legally qualified to exercise the powers and perform the duties of the office there is a vacancy. Mechem on Public Offices and Officers, §§126, 396."

To the same effect, *Brown* v. *Quintilian,* 184 A. 382 (Conn., 1936); *State ex rel. Smallwood* v. *Window,* 155 N. W. 629 (Minn., 1915); *Commonwealth ex rel. Kelley* v. *Kelley,* 185 Atl. 307 (Pa. 1936). See also, Note in 50 L.R.A. (N. S.) 365, and Annotation in 71 A.L.R. 848.

*People* v. *Pillmann,* 1 N. E. (2d) 788 (Ill., 1936), goes even further than is necessary in the instant case in that it holds, as to an elective supervisor of a town (p. 729). "Where an officer, so elected, holds by virtue of the statute until his successor has been elected and qualified, his temporary occupation does not prevent the declaration that a vacancy in such office exists, and the filling of same by the authority empowered so to act in such situation." In the same way, *State* v. *Young,* 68 So. 241 (La., 1915), after canvassing the authorities, held in an illuminating opinion that even a general holding-over clause in a state constitution does not prevent the Governor from making a recess appointment to replace an officer holding over.

*Gosman* v. *State,* 6 N. E. 349 (Ind., 1886), holds that even the familiar holding-over clause does not enable one who is constitutionally ineligible to serve more than eight years to hold over after eight years' service. The court so held in spite of its conclusion that otherwise the familiar clause would operate to prolong legally the term of the incumbent, and that no vacancy would therefore exist. Under the facts the court therefore held that a vacancy did exist. But here again, the authorities are divided. In *Jones* v. *Roberts County,* 121 N. W. 861 (S. D., 1911), the court held, contrary to the above-quoted Indiana case, that a county superintendent of schools who had served four years in succession, the state Constitution providing that no person shall be eligible for more than four years in succession to such office, can perform the duties of that office and be paid therefor, until his successor is elected or appointed and qualified, even in the absence of the familiar holding over clause. The court rested its decision on the usual implication which abhors vacancies. The court, however, points out that he is (p. 863) "not [to be] regarded as in most respects a de jure officer." *State ex rel. Sikes* v. *Williams,* 121 S. W. 64, 68 (Mo., 1909), uses similar language. "The right of the officer who thus holds over is by sufferance, rather than from any intrinsic title to the office."

It must be admitted that *Benson* v. *Mellor,* 137 Atl. 294 (Md., 1927), is a case in point which wholly favors the position of González. After pointing out that the general rule is that incumbents may hold over until their successors qualify, whether there is express provision therefor or not, unless there is an express mandate to the contrary, the Maryland Court of Appeals, after conceding that there have been conflicting statements in the Maryland decisions, comes to the conclusion for which the petitioner contends. The court asserts that holding over is (p. 298) "a filling of the office inconsistent with a vacancy", saying that "There

would seem to be no distinction in this respect between a holding over under express authority and a holding over without it; the holding over is in each instance of the same nature, and the effect and consequences would seem to be the same." The court goes on to add the already noted point that the added period of holding over is "in fact a part of his rightful term of office."

Nevertheless, the court fails to examine in any way, critically or otherwise, the theory already noted which distinguishes between holding over under a specific clause which legally prolongs the term as against holding over without such a clause, which by judicial interpretation provides a temporary filling of the gap. The Maryland case utilizes the routine argument against vacancies, but the court overlooks the fact that a remedy short of legal title to the office is available. The Maryland case in effect holds that a clause as important as "until his successor is appointed and qualified" in a constitution or statute is surplusage. We cannot concur in such a conclusion. *Commonwealth* v. *Glass,* 145 Atl. 278, 81 (Pa., 1929), cites and specifically disapproves of *Benson* v. *Mellor,* reaching the same conclusion as we do on this question. We are not persuaded by the Maryland case, and prefer to follow the Connecticut, South Carolina, and Pennsylvania cases. We come to this conclusion, although other cases contain similar intimations. *State ex rel. Rogers et al.* v. *Johnson, Mayor,* 237 P. 12 (Wash., 1925), although not so clear as the Maryland case because of certain peculiarities of the statutory provisions therein, seems to indicate that no vacancy exists if an incumbent holds over after the expiration of his term, even in the absence of the familiar holding over clause, although conceding that "is not the precise question" in that case. *McGuirk* v. *State ex rel. Gottschalk,* 169 N. E. 521 (Ind., 1930), which also seems contrary to the rule we are adopting, relies on an early Connecticut case (*Harrison* v. *Simonds* (1877), 44 Conn. 318,

319) which, as we have seen in the *Alcorn* case, is not the law in Connecticut today.

■ It remains only to note the possible effect of two Sections of our Political Code. Section 169 thereof (Revised Statutes, 1911, §2856, p. 537) reads as follows:

"By direction of the Governor and with the approval of the Executive Council, every officer shall continue to discharge the duties of his office, and shall be entitled to the compensation of the office although his term has expired, until his successor has entered upon the duties of the office."

Orraca contends that failure to comply with that Section defeats González's right to hold over. Although that provision was enacted while the Foraker Act, which provided for an Executive Council with considerably different powers than our present Executive Council, was our Organic Act, nevertheless Orraca asserts here that §169 is still in effect. To resurrect this section of the Political Code from the limbo of the forgotten, would lead to some startling conclusions. If, pursuant to §26 of our present Organic Act, the Senate is held to have inherited this function of the previous Executive Council, §169 must fall as being in conflict with the provisions of our present Organic Act setting up a Senate with exclusively legislative functions and sitting only a small portion of the year, in contrast to the Executive Council under the Foraker Act, which had a combination of legislative and executive duties and was almost constantly in session. To find that no officer could hold over without the approval of the Senate would as a practical matter nullify this status, except during the limited period the Senate was in session. Nor can we conclude that the present Executive Council performs this function. Apart from the fact that the present Executive Council did not inherit under the Jones Act either the function of confirming appointments, which went instead to the Senate, or any of the functions formerly exercised by the previous Executive Council (Title

48, U.S.C. §777), it would have been wholly illogical for Congress to authorize the Governor, as it did in §26 of the Organic Act, to make a recess appointment of a new incumbent on his own, while a provision of law like §169, which fitted past but not present conditions, continued to prevent a Governor from directing that an officer whose term has expired shall merely hold over, unless the Executive Council approved thereof. It would seem clear without further discussion that §169 died with the repeal of the Foraker Act and the disappearance of the Executive Council as constituted thereunder.

For us to hold that this Section is still in effect would, of course, give no comfort to González, for it would require, even if we discarded as out-moded the necessity of approval of the Executive Council, direction by the Governor, which has not been given, for González to hold over "until his successor has entered upon the duties of the office". If the Legislature should replace § 169 with a true holding over clause, operating automatically and suited to our present Organic Act, there can be no doubt that officials holding over would continue to be vested with legal title to their offices, and that recess appointments to replace them would be void for lack of vacancies in the offices in question. But the decision as to whether it prefers holding over after expiration of terms of office as against recess appointments by the Governor alone remains, we repeat, in the hands of the Legislature.

■ Section 208 of the Political Code (Revised Statutes, 1911, §2895, p. 542) is not applicable to the facts of this case. That Section provides for the specific ways in which vacancies in office may occur *before* the expiration of the terms thereof. Here the question is whether a vacancy exists after the term of an incumbent expires but while he continues to hold over. It has been held that the terms of such a Section are not necessarily exclusive, and that vacancies

of the type herein may be held to occur, in spite of the existence of such a Section (*Toy* v. *Voelker,* 262 N. W. 881 (Mich., 1935)).

We note in passing that the Governor was authorized to make, prior to the adjournment of the Legislature on April 15 of this year, an anticipatory four-year appointment, with the advice and consent of the Senate, to take effect April 26, the day after the expiration of González's term (*People ex rel. Warren* v. *Christian, supra*). The cases sustain such action, provided no changes occur in the Governorship and in the Senate between the date such an anticipatory appointment is made and the date it is to take effect. Such action would have avoided the question raised by the instant case, and would have given the Senate the joint participation in such selections contemplated by the Organic Act. If the Legislature should hereafter supply generis or specific holding over clauses in the usual form, the Governor would be blocked from making recess appointments of the nature of Orraca's appointment. As we have seen, he would then have only the limited choice of submitting an anticipatory four-year appointment while the Senate was still in session, or having the incumbent remain legally in office by holding over until confirmation of his successor at the next session of the Senate.

We need not dwell on the dispute in this case as to the legal content of the word "qualified". Qualification, which includes taking an oath of office, filing a bond and the like, means the taking of such steps subsequent to appointment, whether the appointment be recess or permanent. What constitutes complete qualification is therefore not within the range of the present controversy, which revolves around the validity of the condition precedent to qualification—a valid appointment.

We pass to the procedural aspects of the case. As already indicated, this case came here in a unique fashion.

This is not the usual quo warranto proceeding to try title to public office. Here we have an injunction proceeding to oust Orraca from physical possession of an office which he obtained, according to the allegations of the petition, by force from González, who was holding over in the said office, until legal title to the office is established pursuant to law. Under such circumstances, where title to the office is in dispute, equity will ordinarily intervene, not for the purpose of determining questions of title to the office, but to try the issue of posession (*Heyward* v. *Long, supra*). Although *Heyward* v. *Long, Ekern* v. *McGovern,* 142 N. W. 595. (Wisc., 1913), and other cases hold, as pointed out by the petitioner, that even a *de facto* officer is entitled to injunctive protection of his physical possession of an office until the issue of title may be determined at law, no practical result would be attained by reinstating González in possession, in the light of our views as to his alleged legal title to the office. For the same reason, we shall deny the petition for injunction in aid of our jurisdiction in this certiorari proceeding.

Both parties have urged, us to decide in this injunction proceeding the issue of legal title to the office on its merits, on the theory that, once a court of equity assumes jurisdiction, it is empowered to dispose of the entire controversy involved (*Heyward* v. *Long, supra*). We are not prepared to hold that we should as a general proposition permit injunction proceedings to be substituted for the quo warranto proceeding which is ordinarily required in such cases. But in view of the special circumstances of this case, we shall, as requested by the parties, pass on the question of legal title in this case. Accordingly, we hold that Orraca has legal title to the office in dispute.

We add a further word as to the allegations of the petition that Orraca allegedly took possession of the office at 7:30 on the morning of May 20, and retained possession thereof by a display of force. Orraca denies these allega-

tions. Since that issue of fact has not been litigated, we are not in a position to pass on it. However, we deem it in the public interest to point out that, if the episode did take place as alleged, those participating in it are to be censured. The legal question involved in this case was novel and important. The Governor had every right to test it out by tendering a recess appointment to Orraca. The latter had every right to call on González to surrender the office. Upon González's refusal to comply, Orroca would have been justified in instituting legal proceedings to obtain adjudication of his title to the office and physical possession thereof. The procedure in cases of such wide public interest is sufficiently flexible and resourceful, as the present case vividly illustrates, to obtain speedy determination thereof. We emphasize that we are not at the moment assessing any blame in this case on Orraca, as we have no way of knowing from the record in its present condition what actually took place. But assuming solely for the purposes of this opinion that the allegations of the petition are true, we state emphatically that it ill-becomes those who will be called on themselves to administer justice through the orderly processes of law to obtain by violence what they conceive to be their own legal rights, even though it be ultimately established that the legal position they took thereon was correct. We are engaged in a war designed to substitute law and order for brute force. Democracy begins at home. We should not in our domestic affairs dissipate such a sacred heritage.

The writ of certiorari will be annulled.