The People of the State of New York, Respondent, *v.* Thomas W. Fitzgerald, Respondent, and Appleton L. Clark, Appellant.

1. New York City — When Term of Officer Expires Who Holds "Until" a Specified Date. The word "until," while usually one of exclusion, as used in section 1401 of the charter of the city of New York (L. 1897, ch. 378) is one of inclusion, considering the connection and manifest intention of the legislature, and the term of a justice of the Court of Special Sessions of the second division of the city of New York appointed to hold office "until December 31, 1903," expired at midnight on that day.

2. Constitutional Law — Void Appointment of Successor by Outgoing Mayor. An appointment of his successor on December 29, 1903, and again before noon on January 1, 1904, by the then and outgoing mayor, is void: 1, Because there was no vacancy on the first-mentioned date; 2, because the term of the outgoing mayor expired at midnight on December 31, 1903, and, *eo instanti*, that of the incoming mayor began, and he alone had power to make the appointment; that provision of the charter (L. 1901, ch. 466, § 94) that the term of an incoming mayor shall commence at noon on the first day of January after his election, being in conflict with section 12 of article 3 of the Constitution providing that the terms of mayors of cities, except of the third class, shall expire at the end of an odd-numbered year.

*People* v. *Fitzgerald*, 96 App. Div. 242, affirmed.

(Argued December 16, 1904; decided January 17, 1905.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 5, 1904, in favor of defendant Fitzgerald, upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The facts, as agreed upon by the parties, are substantially as follows: In January, 1898, the respondent Fitzgerald was appointed justice of the Court of Special Sessions for the second division of the city of New York, pursuant to section 1401 of the charter of that city, to hold office "until December 31st, 1903." He qualified and held the office until the expiration of his term.

On the 29th of December, 1903, Seth Low, who was then

mayor of the city of New York, appointed, so far as he had the power, the respondent Clark to said office, "for the term of ten years, which ends on the 31st day of December, 1913, to succeed Thomas W. Fitzgerald, whose term expires December 31st, 1903."

On the first of January, 1904, at about ten o'clock in the forenoon, Mr. Low, claiming to still act as mayor, appointed, so far as he had the power, the same person to the same office "for the term of ten years, which ends on the 31st of December, 1913." Mr. Clark qualified under each appointment on the day it was made.

On the 24th of December, 1903, George B. McClellan, who had been elected mayor at the November election, took the oath of office and filed the official certificate thereof. During the afternoon of January 1st, 1904, Mayor McClellan appointed, provided there was then a vacancy, the respondent Fitzgerald to the office in question "to succeed himself and until the 31st day of December, 1913, to take effect immediately." Mr. Fitzgerald forthwith qualified in the usual way. Each appointee possessed the legal qualifications to hold the office and each claims the right to hold it for the term of ten years. The People take no part in the controversy between the two claimants, but they ask that the question be determined and that the office be awarded to the person entitled thereto. The Appellate Division, by a divided vote, rendered judgment in favor of Mr. Fitzgerald, whereupon Mr. Clark appealed to this court.

*J. Newton Fiero* and *William B. Hornblower* for appellant. A vacancy in the office of justice of the Court of Special Sessions existed on December 31, 1903. (*Elston* v. *Robertson*, 39 Barb. 9; *Mangam* v. *City of Brooklyn*, 98 N. Y. 592; *McCluskey* v. *Cromwell*, 11 N. Y. 593; *People* v. *North*, 72 N. Y. 124; *Thompson* v. *Hunter*, 149 N. Y. 123; *Wood* v. *Lacombe*, 97 N. Y. 43; *People* v. *Wemple*, 115 N. Y. 307; *State* v. *Love*, 39 N. J. Eq. 14; *Brodee* v. *Campbell*, 17 Col. 11.) The appointment of appellant Clark on

December 29, 1903, in anticipation of the vacancy, was effective to fill the vacancy which existed on December 31, 1903. (Throop on Public Officers, § 993; Meachem on Public Officers, § 133; *Haight* v. *Love*, 10 Vroom, 14; *People* v. *Blanding*, 63 Cal. 333; *Whitney* v. *Van Buskirk*, 40 N. J. L. 463; *Horan* v. *Lane*, 53 N. J. L. 275; *Palmer* v. *Dailey*, 4 Ohio C. Ct. 124; *State* v. *Catlin*, 84 Tex. 48.) There is no necessary conflict between the Constitution and the Greater New York charter as to the mayor's term of office. (*People* v. *Bd. of Suprs.*, 42 App. Div. 510; *People* v. *Scheu*, 60 App. Div. 592.) Even if the court should hold that the charter provision with respect to the mayor's term of office was *pro tanto* unconstitutional, still, since Mayor McClellan's term of office did not begin until noon of January 1, 1904, Mr. Low was lawfully holding over as and exercising all the powers of the office of mayor during the period from midnight on December 31, 1903, to noon on January 1, 1904, and his appointment of appellant Clark on the morning of January 1, 1904, was, therefore, valid and effectual to fill the vacancy then existing in the Court of Special Sessions. (*People* v. *Crissey*, 91 N. Y. 616; *People* v. *North*, 72 N. Y. 124.)

*John G. Milburn* and *James Burke, Jr.*, for the defendant, respondent. If the statute provides when an appointment to a public office shall be made, it cannot be made at any other time, and any attempt to make such appointment other than as prescribed is invalid and void. (*State ex rel.* v. *Peelle*, 124 Ind. 515.) In the case of an ambiguity existing in a statute the court will construe its meaning according to the doctrine of *in pari materia*. (*Settle* v. *Van Evrea*, 49 N. Y. 280; *Wright* v. *Adams*, 45 Tex. 134; *Brown* v. *Woodruff*, 32 N. Y. 361; *Clark* v. *Mayor, etc.*, 111 N. Y. 621; *Smith* v. *People*, 147 N. Y. 339; *Bunce* v. *Reed*, 16 Barb. 347; *People* v. *Keeler*, 17 N. Y. 374; *Bergen* v. *Powell*, 94 N. Y. 591.) The term of office of Mayor Low expired at midnight of December 31, 1903, and he had no power to make an appoint-

ment to the office in question after that hour. The statute purporting to extend his term to noon of January 1, 1904, is unconstitutional and void, and the purported appointment of Mr. Clark by Mr. Low on January 1, 1904, is invalid and void. (*Kelly* v. *Van Wyck*, 35 Misc. Rep. 210; *People* v. *Whitlock*, 2 N. Y. 198; *People* v. *McKinney*, 52 N. Y. 379; *Long* v. *Mayor, etc.*, 81 N. Y. 427.) The appointment of the defendant Clark on the morning of January 1, 1904, cannot be upheld on the theory that Mayor Low continued in office to fill a "vacancy" in the office of mayor, as a "vacancy" did not exist according to the statutory definition. (L. 1892, ch. 631, § 20.) The theory of "holding over" after the expiration of the mayor's term cannot be invoked in the case at bar to uphold the purported appointment of the defendant Clark on January 1, 1904. (*People* v. *Randall*, 151 N. Y. 501; *People* v. *Foley*, 148 N. Y. 677; *Olmsted* v. *Dennis*, 77 N. Y. 387.) The words "shall expire at the end of an odd-numbered year" fix the term of all elective officers in cities *pro tanto*. The details of procedure, the number of years of an official term, are preserved to the legislature, but the only mandate, the self-executing mandate, of the section is unambiguous, and fixes a limit which the legislature has failed to obey. (*Patterson* v. *Welles*, 1 App. Div. 13; *Murphy* v. *Luitzpan*, 15 Misc. Rep. 496; *Wood* v. *Lacombe*, 34 Hun, 401.)

VANN, J. The decision of this controversy depends upon the meaning of the city charter, which contains some provisions inconsistent with each other, and one, as it is claimed, in conflict with the Constitution itself. It is not surprising that confusion arose and that executive officers differed in the interpretation of their powers, for the charter shows some lack of attention to details, caused, as it is said, by combining many scattered statutes into one. We will call attention to the main provisions involved and for convenience will write in italics the words of special importance before we discuss the questions which arise.

It was provided by the charter of 1897 that on or before

the 20th of January, 1898, the mayor should " appoint five justices of the Court of Special Sessions of the second division * * * who shall hold office *until* the 31st day of December, 1899, 1901, 1903, 1905, 1907 and 1909, respectively, as designated by the mayor." (L. 1897, ch. 373, § 1401.) Although of no importance now it may be observed that while five offices were created six expirations of the terms thereof were to be arranged by the mayor which, of course, is impossible.

By the charter of 1901 the justices of said court were " continued in office until the expiration of the terms for which they have been appointed, and their successors shall be appointed by the mayor for the term of ten years." (L. 1901, ch. 466, § 1405.)

The next section provides that " any vacancy in said office shall be filled by the mayor of said city by appointment *within thirty days after its occurrence.* If such vacancy occur otherwise than by expiration of a term the person appointed to fill such vacancy shall hold office for the unexpired term of the justice whom he succeeds. If the vacancy occur by the expiration of a term, the person appointed to succeed the justice whose term *has expired* shall hold office for the term of ten years." (Id. § 1406.)

By section 94 the mayor is made the chief executive officer of the city and it is provided that he " shall hold his office for the term of two years commencing *at noon on the first day of January* after his election." Other sections of the charter, which, though not directly material, have some bearing, are cited without quoting therefrom. (Id. §§ 97, 1350, 1352, 1357, 1391, 1392, 1424 and 1587.)

The Constitution provides that " all elections of city officers * * * elected in any city * * * shall be held on the Tuesday succeeding the first Monday in November in an odd-numbered year, and the term of every officer shall expire at *the end of* an odd-numbered year." (Const. art. 12, § 3.)

The appellant claims that the office in question became vacant at midnight of December thirtieth and that his

18

appointment on the twenty-ninth was valid, because Mayor Low was in-office when it was made, as well as when the vacancy occurred. He further claims that if this position is wrong, still his appointment during the forenoon of January first was valid, since according to the statute Mayor McClellan did not become mayor until noon of that day, and, hence, Mayor Low was either actual mayor because his term had not expired, or acting mayor because he was holding over.

The respondent claims that at the same instant of time, namely, at midnight of December thirty-first, the vacancy occurred, Mayor Low's term expired and Mayor McClellan's term began. Both parties seem to concede, and such is the law, that an appointment to office in anticipation of a vacancy therein is good only in case the officer making the appointment is still in office when the vacancy occurs.

Three questions are thus presented for decision : *First.* When did the term of the respondent Fitzgerald end ? *Second.* When did the term of the outgoing mayor expire ? *Third.* When did the term of the incoming mayor begin ?

1. The decision of the first question turns upon the meaning of the word "until" as it is used in the section of the charter which provides that the original appointee shall hold office "until the 31st day of December." (§ 1401.) While "until," as an adverb of time, is usually a word of exclusion, it always includes the date which follows, when the connection and manifest intention so require. It is sometimes used in the sense of "until and including," either with or without the added words. If it was not used with that meaning in the instance before us, probably it is the first time in the history of the legislature when it made a public office end on the last day but one of a year, so that one day only of the old year was included in the new term. What object could the legislature have in thus violating its own custom? Why should it make this office an awkward exception to a convenient rule? Who ever heard of an official term of ten years commencing on the last day of a year, or even on the last day of a month?

The political and calendar years are the same and the first
day of January is the commencement of both. To make the
political year, as to one office only, begin on the last day of
the calendar year with no apparent reason for it, would be
strange and eccentric legislation, such as we cannot assume
was intended. If the legislature wished to depart from its
uniform custom and do something never done before, we
think it would have made its purpose plain and not left it open
to question. "Until" is an ambiguous word, because it some-
times has one meaning and sometimes another, even in the act
before us. (§§ 1373 and 1384.) When used in relation to a
favor it generally has an inclusive meaning and prolongs the
privilege. Thus, by an extension of time of payment *until*
a day named, the day is included. When used with reference
to a penalty it has an exclusive meaning and shortens the suf-
fering, for if a convict is sentenced to imprisonment *until* a
day named, the day is excluded. Sometimes the meaning
depends upon usage or utility, as where the word is used in
the light of a uniform custom, or a particular sense promotes
convenience. A vacation *until* Easter and a hiring *until* the
Fourth of July are examples, for the former includes the day
named, while the latter does not. Still even in these instances,
which are mentioned simply for the purpose of illustration,
the meaning might be changed by the context or by the
apparent object of the instrument.

An ambiguity in a statute requires the construction of the
courts to dissolve the doubt and settle the meaning. In the
discharge of that duty they seek to discover the intention of
the legislature by reading the entire statute in the light of
surrounding circumstances and comparing it with other stat-
utes relating to similar subjects and with the general course
of legislation. If one construction would lead to an unreason-
able result it is to be avoided if possible, for "a bad result
suggests a wrong construction." (*People ex rel. Beaman* v.
*Feitner*, 168 N. Y. 360, 366.) If another construction would
lead to a reasonable result in harmony with legislative custom
and history, as well as with the general purpose of the statute,

it is to be adopted if the language used will permit. When these tests are applied to the case in hand, the ambiguity disappears and " until " becomes a word of inclusion, as used in the provision before us. Accordingly we hold that the term of Mr. Fitzgerald ended at midnight of December 31st, 1903.

2. The legislature provided by section 94 of the charter that the mayor should hold his office for the term of two years " commencing at noon on the first day of January after his election." If the provision relating to the hour when the term begins is in conflict with the Constitution, it is void; otherwise it is the law which all must obey.

The Constitution provides that the term of every mayor, as well as of many other officers, except in cities of the third class, " shall expire at the end of an odd-numbered year." As the year does not end on the first of January at noon, but on the thirty-first of December at midnight, there is an apparent conflict between the statute and the fundamental law. It is our duty, however, to reconcile the conflict if it can be done by any fair and reasonable construction, so that the command of both Constitution and statute may be obeyed.

This constitutional provision is new and its main purpose is to take municipal elections out of the stress of politics, by requiring them to be held at a time when ordinarily there is no general election. Accordingly it was provided that elections to choose city officers should be held " on the Tuesday succeeding the first Monday of November in an odd-numbered year," while general elections to choose state officers are held on the corresponding day of an even-numbered year. (Const. art. XII, § 3.) For convenience and uniformity it was thought best to make the term of office of all local officers who are elected on one day expire on one day, instead of allowing them to be scattered along through different months of the year, as had formerly been the case. The taste of localities in this respect could no longer be consulted, as it had been when some cities held their charter elections in February and the officers chosen assumed their duties in March, while other cities elected in the fall and the term began in the winter

As the time of election was made uniform, the time of laying down and taking up office was made uniform also. Even existing terms were shortened or lengthened as the case required, in order to have absolute uniformity in this respect. (Art. XII, § 3.) All the large cities were treated alike and the period between the election and the assumption of office was made the same throughout the state. While the legislature can still fix the length of the term, the Constitution has fixed the day of the year when all terms must end, although it does not require that they should all end the same year. Uniformity in this respect is part of the plan to divorce municipal and state elections.

The claim is made that this is an incidental rather than a vital part of the plan and should yield to the extent of part of a day, because fractions of a day are ignored and a day in law is regarded as but a point of time. We can give no heed to this argument. Legislators have no more power to deal with a short period of time after it has been taken away from them than with a long period. When the Constitution says that a term of office shall end at midnight the legislature cannot say it shall end at noon the next day. We think that part of the charter which provides that the term of the mayor shall commence at noon on the first day of January is in hopeless conflict with the requirement of the Constitution that the term of said office shall expire at the end of the year. It follows that the term of the outgoing mayor expired on the thirty-first of December, 1903, at midnight.

3. The term of the incoming mayor necessarily began when that of the outgoing mayor ended. There was no period of time, however short, when there was no mayor, and hence there was no holding over. The Constitution, in bounding the end of the old term, by necessary implication fixed the beginning of the new one. The length of the term is not determined by the Constitution, for it may be one year or ten in the discretion of the legislature. The day, hour and minute when the term must begin, however, are fixed by the Constitution beyond the power of change by the legislature.

Whether the term is two years, as at present, or four years, as it was but recently, it must " expire at the end of an odd-numbered year," and hence, as an interregnum could not have been intended, the new term must begin at the commencement of an even-numbered year. By fixing with exactness the end of one term, the Constitution marked out the beginning of the next. It does not fix the beginning and the end of the same term, but it fixes the end of one term and the beginning of the next, leaving the length of both to be fixed by the legislature.

When, therefore, official power left Mayor Low at midnight, *eo instanti* it entered Mayor McClellan. The pomp and circumstance of a public inauguration is unnecessary to pass title from the retiring to the incoming mayor. That may be an appropriate method of marking the acceptance of a great office, but it is not essential to the transmission of the right to discharge the duties thereof. The power passed by operation of law through the election by the people, the expiration of the preceding term and the taking in advance of the oath of office. We think that the term of the incoming mayor commenced on the first day of January, 1904, at the instant when the old year ended and the new year began.

We are thus led to the conclusion that both appointments by Mayor Low were invalid, because when the first was made there was no vacancy, and when the second was made he was no longer mayor. It follows that the appointment by Mayor McClellan was valid and that the respondent Fitzgerald is entitled to the office.

The judgment appealed from should be affirmed, with costs.

CULLEN, Ch. J. I concur with Judge VANN in his discussion of the first two questions presented by this appeal. I differ from him, however, as to the third question.

The power of the legislature over the official terms of municipal officers is plenary, except as limited by the Constitution. The Constitution provides that as to such officers in

certain cities their official term must end with the close of odd-numbered years. But there is no direction as to what time such official term shall begin. Probably if the legislature had been aware that its direction that the term of the mayor of the city of New York should contine to twelve o'clock noon on the first day of January in an even-numbered year was unconstitutional and invalid, it would have enacted that the term of the incoming mayor should commence at twelve midnight on the thirty-first of December previous. But the courts have no power to supply such a defect in legislation. It does not, however, at all follow that the outgoing mayor continued in office as a holdover until his successor's term began. The constitutional power conferred on the legislature to provide for filling vacancies in office applies only where office is vacant by some casualty such as the failure of the new officer to qualify, his death or resignation. It has no application whatever when the office is vacant simply because the legislature has so regulated official terms that it cannot be filled by the electors or the proper appointing power. Any other rule would enable the legislature to set at naught the mandates of the Constitution and — while it is settled law that it cannot extend the term of an elected local officer — enable it by deferring the election or qualification of a successor to practically extend such term by authorizing him to continue in office as a holdover.

This doctrine was held in the case of *People ex rel. Burger* v. *Blair* (21 App. Div. 213 ; affirmed by this court on opinion below, 154 N. Y. 734).

It follows that though there was a hiatus between the expiration of the term of the old mayor and the beginning of that of the new, the old mayor had no power during that period to discharge the duties of the office, and his appointment of defendant as justice of Special Sessions was void.

Gray, O'Brien, Bartlett and Werner, JJ., concur with Vann, J. ; Cullen, Ch. J., concurs in memorandum ; Haight, J., absent.

Judgment affirmed.