STATE EX REL. CHARLES W. JEWETT v. C. JOHN SATTI

SUPERIOR COURT     NEW LONDON COUNTY     FILE NO. 17459

Memorandum filed February 21, 1947.

E. Lea Marsh, Jr., of Deep River, and Edmund W. O'Brien, of New London, for the Plaintiff.

Richard F. Corkey and James E. Corkey, both of New London, for the Defendant.

TROLAND, J. This is an action in the nature of quo warranto to determine the lawful holder of the office of compensation commissioner for the second congressional district of the state of Connecticut. The material facts involved are not disputed. The parties seem to concede that the questions of law determinative of the issues are: 1. Did Governor Raymond E.

Baldwin, on December 24, 1946, have the power to lawfully appoint a compensation commissioner for said district for the term to commence January 1, 1947? 2. Did the intention of Governor Baldwin to resign, and his resignation of the office of governor on December 27, 1946, nullify his appointment of Mr. Jewett, made on December 24?

Honorable Raymond E. Baldwin was on the Tuesday after the first Monday of November, 1944, duly elected governor of the state of Connecticut, to hold office for the term from the Wednesday following the first Monday of January, 1945, to the Wednesday following the first Monday of January, 1947. He thereafter entered upon the duties of said office intending to serve the full term, which would expire January 8, 1947. At the same election Honorable Wilbert Snow was duly elected lieutenant governor for the same term and qualified and assumed said office.

C. John Satti was appointed compensation commissioner for the second congressional district on December 31, 1941, for the term beginning January 1, 1942, and ending December 31, 1946. For several months prior to December 24, 1946, Governor Baldwin had been considering the appointment of a successor to C. John Satti for the term to commence January 1, 1947. On December 24, 1946, Governor Baldwin performed all formal acts to effect the appointment of Charles W. Jewett to the office of compensation commissioner of the second congressional district for the term of five years from January 1, 1947, and said Charles W. Jewett performed all formal acts to accept said appointment and to qualify as such compensation commissioner.

Governor Baldwin had been elected United States senator for the short term to commence November 8, 1946, and end January 3, 1947, and prior to December 24, 1946, had formed an intention to resign the office of governor of Connecticut and assume the duties of United States senator prior to January, 1, 1947. On December 26, 1946, Governor Baldwin submitted his resignation of the office of governor, effective at noon December 27, 1946. Thereafter, on December 27, 1946, Lieutenant Governor Wilbert Snow commenced to exercise the powers and authority appertaining to the office of governor, and continued so to act until January 8, 1947. On December 27, 1946, Lieutenant Governor Snow took the oath of office as governor of the state of Connecticut.

Thereafter, Honorable Wilbert Snow, either as governor of the state of Connecticut or as the lieutenant governor of said state, exercising the powers and authority appertaining to the office of governor, as claimed by the respondent, or solely as lieutenant governor of the state of Connecticut exercising the powers and authority appertaining to the office of governor, as claimed by the relator, performed all formal acts to effect the appointment of C. John Satti to the office of compensation com' missioner for the second congressional district, on December 31, 1946.

C. John Satti performed all formal acts to qualify as com' pensation commissioner and to assume the office, has physically occupied the office of compensation commissioner of the second congressional district since January 1, 1947, and has refused to surrender the office to the relator Charles W. Jewett.

The legislative authority for the appointment by the governor of a compensation commissioner is § 5241 of the General Stat' utes, which provides: "Sec. 5241. Appointment and term of compensation commissioners. Vacancies and removals. There shall continue to be five compensation commissioners, one for each of the five congressional districts as constitutes by section 557. On or before January first of each year, the governor shall appoint a competent person to be compensation commissioner for the district in which the term of the commissioner will ex' pire on such date, for the term of five years. Each commission' er shall be sworn to a faithful performance of his duties. Vacan' cies occurring during a term shall be filled by the governor. After due notice and public hearing the governor may remove any commissioner for cause and the good of the public service."

It is important to note the words "on or before" as used in this section. Prior to 1918 the language of the statute (Gen' eral Statutes, Rev. 1918, § 5356) was that "Upon January first, of each year, the governor shall appoint . . ." Public Acts, 1918 (Special Session), chapter 142, § 9, amended the relevant section of the General Statutes mentioned above to read: "On or before January first of each year, the governor shall appoint . . ." This for the first time authorized the gover' nor to complete the appointment of a compensation commission' er before the first of January. Commencing with the appoint' ment of George B. Chandler, on August 19, 1919, for a term to begin January 1, 1920, every compensation commissioner

appointed for a regular term of five years from January 1 has received his appointment before January 1.

In view of his intention to resign his office before January 1, 1947, Governor Baldwin conferred with and sought and received an opinion from the attorney general of Connecticut concerning his right to appoint a compensation commissioner for the second congressional district, and on December 23, 1946, was advised by that official that in his opinion the governor had the authority to make the appointment in question.

We are here construing the meaning of a statute. The construction given to it by our governors over a long period in making appointments is to be considered as evidence of its meaning. 50 Am. Jur. § 319. The opinion of the attorney general is entitled to respect and careful consideration by the court, although not binding on it. 5 Am. Jur. § 14, p. 243.

The respondent argues that this is a prospective appointment in anticipation of a vacancy and that under the common law it is valid only when the officer making the appointment is still in office when the vacancy occurs. Respondent relies principally on the authority of *People* v. *Fitzgerald,* 180 N. Y. 269, although other cases have been cited in support of this claim and have been considered carefully by the court. It is noted that in each case cited by the respondent the vacancy attempted to be filled by anticipation occurred after the term to which the appointing authority was elected had expired. The vacancy which Governor Baldwin filled on December 24, 1946, was a vacancy sure to occur during the governor's term of office, which was not to expire until January 8, 1947.

Each of the cases cited by respondent in which the common-law rule was applied involved the construction of statutes in other jurisdictions none of which were like the Connecticut statute being here construed. For instance, respondent urges great weight be accorded the case of *People* v. *Dethloff,* 283 N. Y. 309, which on examination discloses a case involving the construction of a statute of New York loosely drawn and not in point with the instant case.

The Connecticut statute, § 5241, definitely gives to the governor express authority to appoint a compensation commissioner before the vacancy arises. It was within the power of the legislature, subject to constitutional limitations, to change the common-law rule or to create exceptions to it. When in 1918 our

General Assembly changed the language of the statute and authorized an appointment before January 1, it used language which clearly imports such intention. It thus appears that Governor Baldwin had the power to appoint a compensation commissioner before January 1, 1947, and that such power accrued to him and could be exercised a reasonable time before said January 1, 1947. It was conceded on the trial that December 24, 1946, was within such a reasonable time. The respondent claims that Governor Baldwin's intention to resign before January 1, 1947, nullified and made void his act of appointment on December 24, 1946. This claim is rejected by the court. To uphold it would be to rule that on said date because of his intention the governor was something less than governor. Such a ruling is untenable.

The respondent claims that the resignation of Governor Baldwin on December 27, 1946, nullified and cancelled his appointment of Mr. Jewett made December 24, 1946. This claim is rejected by the court. Governor Baldwin, being vested with the power of appointment to the office in question, on December 24, 1946, exercised that power, appointed Mr. Jewett and Mr. Jewett accepted the appointment. The action of the appointing authority was complete and final. Mr. Jewett's rights thereunder became vested, and Governor Baldwin himself could not revoke the appointment.

The respondent makes a broad general claim, citing *State* v. *Sullivan,* 81 Ohio St. 79, that to uphold the right of Governor Baldwin to make the appointment is in effect to authorize him as an outgoing governor to forestall the rights and prerogatives of his own successor by appointing a successor to an office expiring after his power to appoint had itself expired.

The case cited involves an appointment made by a governor whose elected term was about to expire on January 11, and who attempted to make an appointment under a statute to a vacancy to occur on February 1, in the term of his elected successor. The case cited is to be distinguished from the case we are deciding in several particulars: 1. In this case Governor Baldwin's power of appointment by express authority was vested in him at the time he exercised it. 2. The vacancy was "sure to occur," as the phrase is used in our law, during Governor Baldwin's term. 3. On December 24, 1946, Governor Baldwin's successor-elect was Honorable James L. McConaughy, whose term

was to commence January 8, 1947, and the action of Governor Baldwin did not forestall the rights and prerogatives of such successor.

Insofar as it may be necessary to distinguish the decision in this case from cited cases, the court is of the opinion that Honorable Wilbert Snow was at no time governor of Connecticut. Const. Conn. Am. XXXIV. Upon the resignation of Governor Baldwin, Mr. Snow as lieutenant governor became authorized to exercise the powers and authority appertaining to the office. As such he was authorized to accomplish the unfinished business of the Baldwin term. The power to appoint a compensation commissioner for the second district had been legally exercised on December 24, 1946. With respect to this appointment nothing remained to be done by the office of governor.

Lieutenant Governor Snow was not forestalled or deprived of any right or prerogative belonging to him. There remained no power to appoint to the office of compensation commissioner of the second congressional district, and Lieutenant Governor Snow's attempted appointment was without authority and void. General Statutes, § 5241; State ex rel. Eberle v. Clark, 87 Conn. 537.

The relator Charles W. Jewett is entitled to the office of compensation commissioner for the second congressional district, and judgment may enter accordingly, and for the relator to recover his costs.