TEK.RELL, Justice
(dissenting).
The facts in this proceeding are detailed at length in the majority opinion, making it appear complex and difficult, but as Abraham Lincoln was wont to say, “strip it of all the dead wood and get right down to hardpan” it is simple. Robert H. Wing-field, recently nominated for Circuit Judge of the Seventh Circuit, resigned as County Judge of Volusia County, effective at midnight, Monday, January 3, 1955. December 28, 1954, seven days before his term expired, Acting Governor Johns appointed Thomas N. Tappy to succeed Wingfield for a term commencing at midnight, January 3, 1955. On the last named date, Tappy filed his bond dated January 4, 1955, approved by the Comptroller but it was not approved by the County Commissioners as the law requires. Tappy was commissioned County Judge January 3, 1955, his term to run from midnight of that date until the first Tuesday in January, 1957. Collins was inaugurated Governor at noon January 4, 1955. January 10, 1955, having found that Tappy had not qualified for County Judge, as required by law, he appointed John S. Byington as County Judge. 'January 17, 1955, Byington filed his oath and bond approved by the Comptroller and the County Commissioners. January 18, 1955, Tappy filed wha't he called a duplicate bond approved by the Comptroller and the County Commissioners the same date. It u-ecites that Tappy was appointed County Judge January 4, 1955, and bore the same ■date. The court below held the apppointment of Tappy invalid because (1) there was no vacancy at the time it was. made nor did one occur during Johns’s tenure; (2) Tappy failed to qualify as required by Section 7, Article VIII of the Constitution prior to issuance of his commission. Tappy appealed from this order.
The question for determination is whether or not Wingfield’s resignation created a vacancy that the Acting Governor was authorized to fill.
Tappy contends that' w.hen Wingfield qualified and was commissioned Circuit Judge December 28, 1954, a vacancy was created in the office of County Judge which Acting Governor Johns was authorized to fill. The Circuit Court-held that notwithstanding Wingfield’s qualification for Circuit Judge, he was not barred from continuing in the office of County Judge up to the minute he fixed for.his resignation as such to take effect, the succeeding minute being the beginning of his tenure as Circuit Judge. Until that instant (midnight January 3, 1955), said the Circuit Court, there was no vacancy' in the office of County Judge, consequently the attempted appointment of Tappy on December 28, 1954, and all acts pertaining thereto prior to the effective date of his resignation were devoid of legal authority.
In support of his answer to this question, the Circuit Judge -cited State ex rel. Jackson v. Crawford, 76 Fla. 388, 79 So. 875, where we dealt with the power of the governor to fill vacancies in office. State ex rel. Landis v. Bird, 120 Fla. 780, 163 So. 248, is to the same effect. See also In Advisory Opinion to the Governor, 117 Fla. 773, 158 So. 441. In further support of his premise, the Circuit Judge invoked the common law rule recited in 30 Am.Jur., Section 24, as follows: “The Governor may make an appointment to fill a prospective vacancy* before it occurs, where it is sure to occur within his term of office.” The following cases were cited in support of this limitation: State ex rel. Landis v. Baxter, 122 Fla. 312, 165 So. 271; State ex rel. Attorney General v. Philips, 30 Fla. 579, 11 So. 922; State ex rel. Farrer v. McIntosh, 109 Minn. 18, 122 N.W. 462, 126 N.W. 1135, and People v. Fitzgerald, 180 N.Y. 269, 73 N.E. 55.
Under Section 19, Article IV of the Constitution, The Honorable Charley Johns .was elevated to the status of Acting Governor 'account of the fact that he was President of the Senate and the death of Governor Dan McCarty September 28, 1953. This provision of .the Constitution provided, however, “But should there be a *171 general election for members of the Legislature during such vacancy, an election 'for Governor to fill the same shall be had at the same time.” There was a general election for members of the legislature during “such vacancy” at which The Honorable LeRoy Collins was elected to the office of governor “for 'that part of the unexpired term commencing on the first Tuesday after the first Monday in January next after such election.” Such was the imperative command of Sections 6 and 7, Article XVIII of the Constitution as amended in 1944. Since the law does not recognize fractions of the day and under the last 'cited provisions of the Constitution Collins was elected to fill the unexpired term of McCarty “commencing on the first Tuesday after the first Monday in January next,” there can be no escape from the conclusion that Collins’s term commenced at midnight, January 3, 1935, at which time Acting Governor Johns’s tenure expired.
Prior to the 1944 amendment to Sections 6 and 7, Article XVIII, the term of all appointees and of those elected to fill vacancies in office extended “only to the election and qualification of a successor‘at the ensuing general election.” Said amendments were designed to prevent vacancies that sometimes occurred in elective and appointive offices running only from the “general election” to the “first Tuesday after the first Monday in January next after such election.” “Tuesday,” or any day of the week for that matter, begins at midnight the previous day and since the Constitution docs not venture to qualify the time, “Tuesday” as used in Sections 6 and 7, Article XVIII, must be said to commence at midnight, Monday, at which time the Johns term expired and the Collins term commenced. It is a matter of such common knowledge that every day in the week commences at midnight the night before, it does seem silly to labor the point.
In this holding we do not overlook the provisions of Section 2, Article' IV of the Constitution which inter alia provide the Governor “shall hold his office for four years from the time of his installation”. Section 2, Article IV, also carries the provision that the term of office of the Govern- or “shall begin on the first Tuesday after the -first Monday in January after - his election.” Account of postponing “installation” approximately twelve hours is in no sense inconsistent - with, the provision that his term begins at midnight Monday but I will say more about this later.
It is the custom in this and other states for the governor to take the required oath and assume the duties of his office in a public ceremony at high noon on-Tuesday after the first Monday in January following his election, approximately twelve hours after his term commences. Who performs the duties of the office of governor during this twelve hour period? That question has not before arisen in this state, but in states with constitution and statutory provisions similar to ours, it is held that where the “installation” of the incoming officer is delayed to a convenient hour, if any business be transacted during the delay, it will be limited to matters of necessity. All business pertaining to or falling within .the new term is within the jurisdiction of the incoming officer,, notwithstanding the delay in his “installation.” This view accords with reason and is supported by State ex rel. Farrer v. McIntosh, supra; People v. Fitzgerald, supra; People v. Dethloff, 283 N.Y. 309, 28 N.E.2d 850; Ivy v. Lusk, 11 La.Ann. 486; Mecham, Public Officers and Offices, Section 133; 42 Am.Jur., Public Officers, Section 129; 67 C.J.S., Officers, § 46, page 199.
The Constitution nor the statute desig'-nates a place or time for the governor to take the oath except it must be taken before entering upon the discharge of his duties. He could take it at midnight Monday night, at sunup Tuesday morning or at any hour to suit' his convenience. Taking it at noon on Tuesday is merely a custom that has been followed in this state for many decades. It is a part of our tradition, the public wants and approves it because it suits their convenience and then it is a more appropriate time than midnight or sunup for the parade and fanfare displayed by officers, soldiers, military escorts, floats, baton twirlers, bands and others who are a part of *172 the ceremony and pass in review before the governor. Eighteen governors have been elected and inaugurated under the Constitution, all of whom were members of the bar but three and each without exception has followed the tradition and treated the occasion as a gala day, free from exacting business cares after the fashion followed by the decisions catalogued in the preceding paragraph.
The second question with which we are confronted is whether or not approval of Tappy’s bond by the Board of County Commissioners was an essential prerequisite to the validity of the commission issued him by Acting Governor Johns.
Section 7, Article VIII of the Constitution inter alia provides that “no such commission shall issue * * * until he shall have filed with the Secretary of State a good and sufficient bond * * * approved by the County Commissioners * * *. If any person elected, or appointed * * * shall fail to give bond and qualify within sixty days after his election, the said office shall become vacant.” Section 114.01(10), F.S., F.S.A., is to like effect. In State ex rel. Davis v. Howell, 100 Fla. 1391, 131 So. 320, 321, the identical question, under similar circumstances are presented here, we held: “The answer shows that the bond executed by the respondent has not been approved by the county commissioners or by the comptroller, and that consequently the respondent is not authorized to receive a commission or to act as sheriff.” Cf. Stinson v. State, 76 Fla. 421, 80 So. 506; State ex rel. Moody v. Barnes, 25 Fla. 298, 5 So. 722. See also Opinion of the Justices, 14 Fla. 277; State ex rel. Wallace v. Callow, 78 Mont. 308, 254 P. 187; State ex rel. Berge v. Lansing, 46 Neb. 514, 64 N.W. 1104, 35 L.R.A. 124; Duffy v. Edson, 60 Neb. 812, 84 N.W. 264; State ex rel. Stain v. Christensen, 84 Utah 185, 35 P.2d 775. These cases approve the rule laid down in State ex rel. Davis v. Howell, supra, and would seem to conclude the question against appellant. - They also settle the point that the legislature cannot expand, contract or materially modify constitutional requirements for eligibility to hold office where the Constitution has prescribed such requirements. Mr. Tappy did not present a bond approved by the county commissioners until January 14, four days after Governor Collins declared the office vacant and appointed Byington. The fact that Tappy is alleged to have asked for a meeting of the County Commission to approve his bond and failed to secure one does not obviate the constitutional requirement.
Regardless of who is governor, he may revoke an appointment any time before the appointee qualifies as prescribed by law. When Governor Collins came into office, he found that no vacancy existed in the office of County Judge when‘Acting Governor Johns appointed Tappy, that his appointment was made to fill a vacancy that did not occur during the Johns administration and even though said appointment had been regular in other respects, it was void because Tappy had not qualified to receive a commission as required by the statute and the Constitution. The fact that he furnished bond approved by a surety company and made an effort to get approval of the County Commissioners and failed does not meet the constitutional mandate. Approval by the County Commissioners is a safeguard imposed by the Constitution and surety companies are no more exempt from it than individuals. It was accordingly within the power of the Governor to declare the office vacant and appoint whom he considered qualified. Tappy’s attempt to post a duplicate bond after the office was declared vacant and Byington appointed came too late. Falconer v. Shores, 37 Ark. 386; State ex rel. Lysons v. Ruff, 4 Wash. 234, 29 P. 999, 16 L.R.A. 140. Tappy was an appointed officer. The leniency granted to elected officers to qualify may not apply to him. Johns could have cancelled his appointment any time before he qualified. Collins could do likewise after his term began.
While I think what has been said is ample reason to uphold the decision of the lower court, there are other compelling reasons why we should do so. We are confronted here with the power of the *173 President of the Senate when the duties of governor devolve on him. Under Section 19, Article IV, of the Constitution, the “powers and duties of Governor shall devolve upon [him]” account of impeachment, removal from office, death, resignation or inability of the Governor. This provision of the Constitution limits his tenure to the “residue of the term, or until the disability shall cease”. Johns, as President of the Senate, was therefore authorized to perform the “powers and duties” of the Governor for the “residue” of McCarty’s term or until his (McCarty’s) disability ceased. That disability was the vacancy caused by death but. during such vacancy a general election was held and Collins was elected to complete that part of the unexpired term of McCarty beginning on Tuesday after the first Monday in January, 1955. By the very words employed in Section 19, Article IV of the Constitution, the “disability” ceased Monday night at midnight when Collins’s term commenced.
I find no statute nor constitutional provision clothing Johns with authority to perform the “powers and duties” of Governor after McCarty’s disability was cured which was the commencement of Collins’s term. County Judge Wingfield knew that his term as Circuit Judge commenced Monday at midnight. The same law governed the commencement of Collins’s term, as well as that of every other newly elected state and county officer. The fact that there was a lapse of a few days in which Volusia County was without a county judge is not unusual. It occurs every time an officer dies or resigns. Acting Governor Johns did not take the oath for twenty-four hours after the death of Governor McCarty though the powers and duties of governor devolved on him as soon as the Governor died. This court was recently without a Chief Justice for a week on account of the death of Chief Justice Mathews. I have seen death remove three Justices of this court and three members of the Cabinet with similar results. Out of respect to the deceased, the appointing authority never fills such vacancies for a reasonable time after death of the incumbent.
But, says the majority opinion, under Section 14, Article XVI of the Constitution, Johns should have continued to act as Governor “until about noon Tuesday, January 4, 1955, when the oath was administered to Governor Collins.” In answer to this contention, it is sufficient to say that Article XVI is the miscellaneous article of the Constitution, each of its thirty-three sections dealing with a different governmental command or prohibition. Section 14 commands that “All State, County and Municipal officers shall continue in .office, after the expiration of their official terms until their successors are duly qualified.” The only reason for this provision is to prevent an interregnum in the office by continuing the occupant in power until his successor qualifies. His inability to qualify at the appointed time could result from sickness, unavoidable absence and many other pauses. The only person who is authorized to continue in office after his term expires in order to prevent an interregnum is the officer who is being succeeded. It had no application to the president of the senate who was performing the “powers and duties” of governor until his disability ceases, which took place when Collins was elected and the time for commencement of his term arrived. If Johns had been the elected predecessor of Collins and Collins had been unable to take the oath on the day appointed, Johns could have continued as Governor until Collins was able to take the oath.
Another reason this provision of the Constitution could have no application here, Collins was present fully able to take over the duties of Governor. He was biding the hour for the public ceremony at noon Tuesday, twelve hours after the commencement of his term, three-fourths of which the office was not open for business, and the other fourth was devoted to preparation for his succession as Governor and felicitations between the outgoing and incoming staffs of the administrations. Every Justice of this court was present and wit *174 nessed this ceremony, which took place less than six months ago. How a majority of them can now hold that the President of the Senate can continue to perform the duties of Governor under Section 19, Article IV, and Section 14, Article XVI of the Constitution after the disability of McCarty ceased is beyond me.
■ If Collins had been unable to take the oath and Johns' had been his elected préd-ece'ssbr, there would be basis for the majority view but not otherwise. The Justices of this court along with tens of thousands of other citizens observed the inauguration spectacle for hours — an exemplification of Jacksonian democracy. It was a tradition that could easily be said to have become a part of the common law of the state. But now six months later a majority of this court brush aside the reality and based on mechanical technicalities say it was not so. It reminds one of the story of the drunk who was browsing about the trophy room of á friend and spied a 125-pound tarpon mounted on the wall; he took a slant at it from every angle he could and then walked off in disgust remarking, “There, ain’t no such fish.”
The gist of my contention is that Johns was at no time Governor as such. He was President of the Senate authorized to perform the “powers and duties” of Governor, “Acting Governor,” until McCarty’s disability “shall cease.” There is no theory under which the controlling provisions of the Constitution, Section 19,' Article IV and Section 14, Article XVI, can be construed to extend McCarty’s disability beyond the beginning of Collins’s term. I think these two provisions of the Constitution rebut every theory advanced in the majority opinion to reverse the court below.
There is accordingly rio escape from the conclusion that the vacancy created by Wingfield’s resignation did riot mature within Johns’s tenure and b.eing so, his appointment of Tappy to fill it was inhibited by both the Constitution and the common law.
I therefore dissent.