THOMAS J. IVY *v.* JAMES A. LUSK and FRANCIS QUARLES.

There is nothing in the Act of 8th of March, 1841, creating the office of Harbor Master, which justifies the conclusion that the 8th of March was the day fixed by law for the commencement of the term of office of the Harbor Master.

However specious the argument that the Governor should, if possible, seek to avail himself of the assistance of his constitutional advisers, the Senate, in making appointments to office, and to avoid an independent nomination, which would only have effect until the end of the next session of the Legislature, it is plain that an appointment thus made by anticipation, has no other basis than expediency and convenience, and can only derive its binding force from the supposition that there will be no change of person, and consequently of will, on the part of the appointing power, between the date of the exercise of that power by anticipation, and that of the necessity for the exercise of such power by the vacancy of the office.

It is entirely inadmissible to pretend that the Governor and Senate can forestall the action of their own successors in office, upon executive appointments to the offices, of which the term shall expire during their possession of the reins of government.

APPEAL from the Second District Court of New Orleans, *Lea*, J. *M. & H. H. Taylor*, for plaintiff and appellant. *Elmore & King*, for defendants.

BUCHANAN, J. The motion to dismiss the appeal in this case, cannot pre-

vail. *Mr. Quarles* is not a warrantor in the legal sense, although styled so in the pleadings in the district court.

The pretensions of plaintiff, as well as those of defendant, to the office of Harbor Master, are not only independent, of, but antagonistic to, those of *Mr. Quarles*. The case of *Williams* v. *Courtney*, 8th Ann. 63, has therefore no application.

The true test of the necessary parties to an appeal is this: Has the party an interest that the judgment appealed from be maintained? As to *Quarles*, it is plain that such an interest does not exist in the present instance. The judgment of the court below was against him, as well as against *Ivy*. *Quarles* has acquiesced in the judgment. *Ivy* alone has appealed. A reversal of the judgment, as between *Ivy* and *Lusk*, can have no effect upon *Quarles*. His right to the office is not in question before us, and even should we be of opinion that neither of the other parties has the legal right to the office, we could not award it to *Quarles*. We could do nothing more, in such a case, than dismiss the suit. In no event, could either of those parties have had any recourse against *Quarles*, had he even been made party to the appeal. He has therefore no interest in the success of either appellant or appellee.

The plaintiff and defendant both claim to have had, at the date of the institution of this suit, (November, 1853,) the legal right to the possession of the office of Harbor Master of the First District of New Orleans. Each is holder of a commission under the broad seal of the State; that of plaintiff, signed by *Governor Walker*, bears date the 12th of March, 1852; and that of defendant, signed by *Governor Hébert*, is dated 8th of August, 1853. The term of office of the Harbor Master, by the Act of 8th March, 1841, is two years; and it is admitted on all sides, that *Francis Quarles* was the legally qualified incumbent of this office, up to the 25th of February, 1853, at which date his term of office expired, and that he was not reappointed. When *Governor Hébert*, therefore, appointed *Mr. Lusk*, in August, 1853, the office was vacant, unless the appointment of *Mr. Ivy* by *Governor Walker*, about a *year* before the expiration of *Quarles*' term, took effect from the expiration of that term, as it was intended to do. But in the interval between the 12th of March, 1852, when *Ivy* was commissioned, and the 25th of February, 1853, when that commission was intended to take effect, a new State Constitution was adopted, and a new State Government organized, with a new Governor, and a new Legislature; and the only question which we deem it necessary to decide, is the legality of an executive appointment to office, under such circumstances, in anticipation of the vacancy of the office.

The argument for the plaintiff is, that inasmuch as the Act of the Legislature creating this office of Harbor Master declares, that "from and after the passage of this Act," it shall be the duty of the Governor to nominate, and by and with the consent of the Senate, appoint three Harbor Masters for the port of New Orleans, who should " hold their office for two years"; therefore, the term of this office has a day fixed by law for its commencement, to wit, the 8th of March, 1841, and the same day, every second year thereafter; and that inasmuch as under the Constitution of· 1845, the Legislature only sat biennially, and the year 1853, when *Quarles*' term of office would expire, was a year of legislative recess, it was proper, if not necessary, that the Governor should lay his nomination of *Quarles*' successor before the Senate, which was in session in 1852, the year previous to the vacancy of the office.

Ivy
*v.*
Lusk.

As to the 8th of March being the day fixed by law for the commencement of the term of office, we see nothing in the Act of 1841, which justifies such a conclusion. The practice of the government, as proved by the executive record in evidence, is, moreover, contrary to this theory; for we find therein that *Quarles'* commission, as already said, took effect from the 25th of February, 1851. And however specious the argument, that the Governor should, if possible, seek to avail himself of the assistance of his constitutional advisers, the Senate, in making appointments to office, and to avoid an independent nomination which would only have effect until the end of the next session of the Legislature, it is plain that an appointment thus made by anticipation, has no other basis than expediency and convenience, and can only derive its binding force and effect from the supposition that there will be no change of person, and consequently of will, on the part of the appointing power, between the date of the exercise of that power by anticipation, and that of the necessity for the exercise of such power by the vacancy of the office.

But we hold it to be entirely inadmissible to pretend that the Governor and Senate can forestall the action of their own successors in office, upon executive appointments to other offices of which the term shall expire during their possession of the reins of government.

Judgment of district court affirmed, with costs.

Spofford, J., concurring. The plaintiff admits that he could not succeed in his pretensions, without overthrowing the constitutional interpretation upon which the decision of the case of *Sigur* v. *Crenshaw,* 8 An. 401 was based.

The public interest and repose, to which all personal pretensions to office are subordinate, demand that the jurisprudence upon this subject, should be as consistent and uniform as possible.

I concur in the decree, upon the authority of the case of *Sigur* v. *Crenshaw.*