WILLIAM R. PATTANGALL, Attorney General,
Will S. Payson, Relator,

*vs.*

HENRY GILMAN.

Cumberland. Opinion October 29, 1916.

*Calendar year and political year. Term of appointing power of Governor.*

1. Where the term of the appointing power extends beyond the time when a vacancy arises, a prospective appointment may be made; and, conversely, where the term of the appointing power does not extend until a vacancy arises in the appointive office, no appointment, prospective or otherwise, may be made.

2. Under article 23 of the amendments to the Constitution, providing that the Governor shall be elected biennially and hold office for two years from the first Wednesday in January next succeeding election, the Governor is elected for a political year and not a calendar year, so that the two year term of a Governor whose office began Thursday, January 1, 1913, expired at midnight January 6, 1915, that being the first Wednesday of January, 1915, when his successor's term began, so that his appointment of relator on December 9, 1914, to fill a vacancy occurring in the state board of dental examiners on the first day of January, 1915, by reason of the expiration of the relator's term, on December 31, 1914, was legal.

Information in the nature of quo warranto to determine the title to the office of a member of the board of dental examiners of the State of Maine. Bill answer and replication filed and upon certain agreed stipulations case was reported to Law Court by agreement of parties. Judgment of ouster.

Case stated in opinion.

*Scott Wilson*, for relator.

*Eben Winthrop Freeman*, for defendant.

SITTING: SAVAGE, C. J., KING, BIRD, HALEY, HANSON, JJ.

. HALEY, J. Information in the nature of quo warranto; to determine the title to the office of a member of the board of dental examiners of the State, now held by the respondent, Henry Gilman, and claimed by the relator, Will S. Payson, and is before this court on report. The report shows that the relator, Will S. Payson, was a duly appointed and qualified member of the board of dental examiners of the State of Maine, on the 16th day of December, A. D. 1914, and that his term of office as such member under the provisions of law, expired at midnight on the 31st day of December, A. D. 1914; that on the 9th day of December, A. D. 1914, said Will S. Payson was nominated as a member of said board of dental examiners by the then Governor of the State of Maine, His Excellency William T. Haines, for a term of five years from the first day of January, A. D. 1915, and on the 16th day of said December, 1914, with the advice and consent of his Council, the said William T. Haines appointed the said Will S. Payson a member of said board of dental examiners of the State of Maine, to fill the vacancy occurring in said board on the first day of January, 1915, by reason of the expiration of the term which said Payson was then serving, for the term of five years, beginning on the first day of January, A. D. 1915, and that on the 17th day of December, A. D. 1914, said Will S. Payson subscribed and took the required oath to qualify him as a member of said board of dental examiners for said term of five years, beginning on said first day of January, A. D. 1915; that on the second day of February, A. D. 1915, said Henry Gilman was nominated by the then Governor of the State of Maine, His Excellency Oakley C. Curtis, as a member of said board of dental examiners for the term of five years beginning on said first day of January, A. D. 1915, and on the 9th day of said February, with the advice and consent of his council, said Governor, Oakley C. Curtis, appointed the said Henry Gilman as a member of said board of dental examiners, to fill the vacancy in

said board arising by reason of the expiration of the term of office of the relator, Will S. Payson, at midnight on the 31st day of December, A. D. 1914, for a term of five years beginning the first day of January, A. D. 1915. It is contended that the appointment of said Payson, the relator, by His Excellency William T. Haines, on said 16th day of December, to fill said vacancy was illegal and void. It is admitted that on February 12th, Henry Gilman subscribed and took the required oath to qualify him as a member of said board of dental examiners for said term, and it is admitted that said Henry Gilman was qualified as required by law to fill said office at the time of his appointment and qualification.

The real question is when the term of office of Governor Haines expired, for the authorities are unanimously in favor of the proposition that if the term of the appointing power extends beyond the point of time when the vacancy arises, a prospective appointment may be made; and, conversely, that if the term of the appointing power does not extend until a vacancy arises in the appointive office, no appointment, prospective or otherwise, may be made by that appointing power. The reason is simple; the appointing power cannot forestall the rights and prerogatives of his own successor by appointing successors to office, beginning after his power to appoint has itself expired. . . . As said by the court in *State* v. *Sullivan,* 81 Ohio St., 79: "It admittedly is the well established general rule of law that an officer clothed with authority to appoint, cannot, in the absence of express statutory authority, make a valid appointment for a term which is not to begin until after the expiration of the appointing officer." If the term of Governor Haines did not extend beyond the beginning of the vacancy in the board of dental examiners, he had no power to make this prospective appointment. This is clear from the authorities cited. Therefore the principal question is whether or not on January 1, 1915, when this vacancy arose, the office of governor was held by Governor Haines? In other words, when did the term of office of Governor Haines expire? By Article XXIII of the amendments to the constitution it is provided: "The Governor, senators and representatives in the legislature shall be elected biennially, and hold office two years from the first Wednesday in January next succeeding their election." The term of office of Governor Haines

began, as prescribed by the Constitution, Thursday, January 1, 1913, and by the same provision of the Constitution, Governor Curtis's term of office began Thursday, January 7th, 1915. It is the claim of the relator that the words of the Constitution, "shall hold his office for two years from the first Wednesday next following the election," means a political year. And it is the claim of the respondent that the provision should be construed as a calendar year. The term "political year" first appears in our reports in the 6th of Maine, 506, in an opinion of the Justices, and to the question propounded to them as to whether "the executive duties of state, when constitutionally exercised by the President of the Senate, devolve at the end of the political year upon the President of the Senate or the Speaker of the House of the next political year, whichever shall be the first chosen; or whether such executive duty shall continue to be exercised by the President of the Senate until another governor shall be qualified?" And the further question: "When the office of Governor has become vacant, and the exercise of the powers and duties of that office have devolved upon and been exercised by the President of the Senate until the first Wednesday of January terminating a political year, and until another President of the Senate has been chosen and has taken upon himself that office, can the office of Governor be further exercised by the first named President of the Senate, or ought said office of Governor to be then exercised by said last named President of the Senate while he holds that station, and until another Governor is qualified?"

Justice Parris said: "If those who framed it (Constitution) had intended that the president of the preceding senate, exercising the office of governor, should hold over in case of a vacancy of governor the succeeding year, would they not have provided also that the governor for the preceding year holding his office to the end of the political year should hold over in case of vacancy the succeeding year? . . . It is manifest that some clauses of the Constitution will not bear a strict literal construction; for instance the term of office of the governor is one year from the first Wednesday of January. In many cases that period will have been fully completed a number of days previous to the first Wednesday of January of the succeeding year; and, unless by construing the

phraseology to mean a political year, such a construction could be given as would extend the term to include the first Wednesday of the succeeding January. . . . So in case of vacancy in the office of Governor the President of the Senate for the preceding political year, whose term of service as senator expires with the year, but from necessity acts as governor, and the council of the preceding year, continue to act as such under like necessity as above stated, in qualifying the members. . . . Upon every view of the subject which I have been able to take, my mind has come irresistably to the conclusion that the executive duties of the State, when constitutionally exercised by the president of the senate, devolve, at the end of the political year, when so exercised upon the President of the Senate of the next political year, the office of Governor for that year being vacant. In the opinion of the Justices, 70th Maine, 590 and 591, in which opinion the Justices answered this question, "At what date in the year, 1880, do the terms of office of the following state officers, expire: The Governor, the Executive Council, Secretary of State, the Treasurer, the Attorney General and the Adjutant General?" and answered the question: "The Governor's term of office, and also that of his council expired at midnight following the first Wednesday of January, 1880. The terms of the other officers mentioned in this question will expire when their several successors are elected, as provided in the Constitution." At the time the above question was answered the Constitution of the State in regard to the term of the governor was, as now, except that the term was then one year and is now two years.

The 5th amendment of the Constitution, which was ratified in 1845, shows plainly that the people in adopting the amendment considered that the provision in the Constitution as to the term of office of governor related to the political year. The amendment was: "The annual meeting of the Legislature shall be held on the second Wednesday of May in each year; and the governor and other state officers elected for the political year commencing on the first Wednesday of January, 1845, shall hold their offices until the second Wednesday of May, 1846." This amendment changed the beginning of the political year from January to the second Wednesday of May, and it so continued until the 8th amendment,

ratified in 1851, when the people changed the political year as follows: "The annual meeting of the Legislature shall be on the first Wednesday of January in each year; and the governor and other State officers elected for the political year commencing on the second Wednesday of May, 1851, shall hold their offices until the first Wednesday of January, 1852." These two amendments clearly show that it was the intent of the people to elect the Governor and Legislature for a political year and not a calendar year; as it provided that "the Governor and Legislature to be elected shall hold their offices until the first Wednesday of January, 1852," and the succeeding governors, there having been no amendment of the 8th amendment as above, until the 23d amendent was proposed to the people and adopted September 8th, and became a part of the Constitution by Resolve of March, 1880, all held their offices for the term of one year, not a calendar year; but the proper construction to be given to the 8th amendment is for a political year till the first Wednesday of January of each year. In 1880, by the 23d amendment, the term of office of governor was changed so that it is for two years instead of one year; but the language of the Constitution is the same as before the change, except as to expressly providing that he shall hold the office for the term of two years from the first Wednesday in January next succeeding his election, at which time the office passes instantly, by the terms of the Constitution, to the governor-elect for the next two political years. We think this construction is according to the intent of the framers of the Constitution, and as the Constitution has been construed by the courts from its adoption.

It therefore follows that Governor Haines' term of office expired at midnight of January 6, 1915, it being the first Wednesday of January, 1915, and that his appointment of the relator was legal. Opinion of Justices, 70 Maine, 590, 591. As before stated, the appointing power has the right to make a prospective appointment when a vacancy will occur during his term of office, and, as the Governor cannot make an appointment without the advice and consent of his Council, it necessarily follows that they may advise and consent to a prospective appointment, as they did to the appointment of the relator, and the entry must be,

*Judgment of ouster.*