846 A.2d 392

**William O. BRYAN**

**v.**

**Linda J. MAKOSKY, et al.**

**No. 76, Sept. Term, 2003.**

Court of Appeals of Maryland.

April 7, 2004.

David R. Thompson (Brynja M. Booth, Cowdrey, Thompson & Karsten, on brief), Easton, for appellant.

Christopher B. Kehoe (Alexis E. Kramer, Ewing, Dietz, Fountain & Kehoe, P.A., Easton, Anne C. Ogletree, Denton, on brief), for appellees.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, J.

This action tests whether Linda Makosky or William Bryan is the duly appointed member of the Talbot County Planning and Zoning Commission. Acting on Ms. Makosky's complaint and Mr. Bryan's counterclaim for declaratory and injunctive relief, the Circuit Court for Talbot County entered a declaratory judgment that Mr. Bryan's appointment on November 26, 2002, was illegal, null, and void, and that Ms. Makosky, an incumbent Commissioner at that time, continued in office as a member of the Commission. Although we do not agree with some of the underlying conclusions of the court, we agree with that result. We shall remand for the entry of a modified declaratory judgment.

### BACKGROUND

At a special election held in November, 1973, the citizens of Talbot County, pursuant to Art. XI–A of the Maryland Constitution, adopted a charter form of government. In conformance with § 1A of Art. XI–A, the Charter took effect December 14, 1973. *See also* Talbot County Charter, § 801. The Charter provides for a five-member County Council, to be elected by the qualified voters of the county at the same time as the election of State officers, and directs that the terms of the council members begin at noon on the first Monday in December next following the election and end at noon on the first Monday in December in the fourth year thereafter. *See* Talbot County Charter, §§ 201, 204, and 205.

Section 404 of the Charter creates a Planning and Zoning Commission, to consist of five members appointed by the County Council. Section 404(a) specifies that the terms of the Commission members are to be five years, "except that the respective terms of the five members first appointed shall be on a staggered basis (of the five initial appointments, one member shall serve for one year, one for two years, one for three years, one for four years, and one for five years)." The section also provides that vacancies "shall be filled for the unexpired term in the manner of original appointment" and that "[e]ach member shall serve until his successor is appointed and qualified."

Article IX of the Charter contained a number of transitional provisions. Sections 902 and 903 provided that the members of the Board of County Commissioners holding office on the effective date of the Charter would become the members of the first County Council, to serve for one year, until noon on the first Monday in December, 1974. That provision dovetailed with § 204, providing for the election of the first elected County Council at the general election for State offices in November, 1974. The first Council, therefore, was in the nature of a holdover Council. Section 906 required that first Council, within 60 calendar days after taking office, to appoint a Planning and Zoning Commission as required by § 404.

Section 909(3) provided that the members of the existing Planning and Zoning Commission "shall continue until the appointment of the new Planning and Zoning Commission provided for in Section 906 of this Charter."

The incumbent County Commissioners were sworn in and held their first meeting as the new County Council on December 14, 1973. At that meeting, they adopted a motion "for the interim to continue with the same members on the Planning and Zoning Commission and the Planning and Zoning Appeals Board that we presently have." No further appointments were made to the Planning and Zoning Commission by the holdover Council, which therefore failed to comply with the Charter mandate of appointing a new Commission with staggered terms.

In November, 1974, a new County Council was elected, and, at its first meeting on December 3, 1974, it appointed five persons to the Planning and Zoning Commission, with staggered terms—one for one year, one for two years, one for three years, one for four years, and one for five years. The minutes for that meeting reflect that the appointments were made "effective immediately, and to bring us in conformance with our Charter." The person appointed for a three year term was William Anderson.

A large part of the confusion and controversy in this case lies in the fact that various minutes, letters, and other documents pertaining to Planning and Zoning Commission appointments in the succeeding years record a number of different dates for either the initial appointment or the expiration of the terms. Many appointments were shown as running from, or to, December 1, one was shown as effective January 1, one as expiring June 30. The Planning Commission minute book shows the initial staggered appointments as running from November 29. Some appointments were described as "for a term to December" of a given year, without mention of a specific date, while others indicated no expiration date at all.

Mr. Anderson's initial term of three years expired in 1977. He continued to serve as a holdover until he was reappointed to the balance of a new five-year term on January 30, 1979. When that term expired in December, 1982, he again continued to serve as a holdover until his successor, Allen Baynard, was appointed in April, 1983. Mr. Baynard resigned in October, 1984, whereupon the Council appointed Carol Kabler for the remainder of his term, *i.e.*, until December, 1987. At that time, Ms. Kabler was reappointed to a new five-year term. Both her certificate of appointment and a letter from the President of the County Council stated that the new term would commence on December 1, 1987. Ms. Kabler held over after the expiration of her term in December, 1992, but was reappointed in May, 1993. In November, 1997—just before the end of her then—current term—Ms. Kabler informed the Council that she did not wish to be reappointed. On December 16, 1997, the Council appointed Ms. Makosky in her place. The letter of appointment stated that her term would expire December 1, 2002.

In conformance with § 204 of the Charter, a new County Council was elected at the general election in November, 1998, and took office on the first Monday in December. That Council consisted of Ms. Spence and Messrs. Foster, Dyott, Harrison, and Higgins. For each of the years 1999, 2000, and 2001, the Council made one appointment to the Commission as a term expired. In September, 2002, the County Planning Officer informed the Council that Ms. Makosky's term would expire on December 20, 2002, and that she desired reappointment. Everyone seems to agree that the Planning Officer was mistaken in positing an expiration date of December 20.

On November 5, 2002, a general election occurred in which three new members—Mr. Duncan, Mr. Carroll, and Ms. Harrington—were elected in place of Messrs. Dyott, Harrison, and Higgins. On November 26, 2002, the "lame duck" Council, by a vote of 3–0, with Mr. Foster and Ms. Spence abstaining, purported to appoint petitioner William Bryan to Ms. Makosky's seat on the Commission, in the belief that her

term ended on December 1.[1] The next day, Ms. Makosky filed a complaint for declaratory judgment and injunctive relief, alleging that her term did not expire until after that of the incumbent Council, that there would therefore be no vacancy on the Commission during the term of that Council, and that, accordingly, the appointment of Mr. Bryan was void.

On December 3, 2002, the newly elected Council had its first meeting, at which it adopted a motion declaring the purported appointment of Mr. Bryan void on the ground that the position was still then occupied by Ms. Makosky. Recognizing that Ms. Makosky had filed suit, the Council authorized the county attorney to obtain a judicial determination of Mr. Bryan's status. The Council did not purport to appoint Ms. Makosky to a new term but was content to allow her to hold over until the matter was resolved in court. Mr. Bryan then promptly filed a counterclaim against both Ms. Makosky and the County Council, asking the court, among other things, to declare that he was validly appointed to the Commission. Noting that the proper corporate defendant was the county, not the County Council, the county filed a motion to intervene, which, apparently without objection, was granted. The county and Mr. Bryan agreed that the case could be resolved on summary judgment, and they each filed a motion.

As the parties agreed that the Charter provisions controlled and that the County Council is without authority to appoint a person to fill a vacancy on the Commission that occurs after the term of the Council has ended, the court recognized that the issue depended on when Ms. Makosky's term ended. In that regard, the court looked to Ms. Makosky's immediate predecessor, Ms. Kabler, whose term, it held, was to end on December 1, 1997. The court did not explain how it reached that conclusion, but it presumably relied on some of the assorted documents that referred to a December 1 beginning

---

1. Although Ms. Spence and Mr. Foster raised concerns about the process by which Mr. Bryan was selected, they abstained because they did not believe that the Council had the authority to make the appointment.

or ending date. Nonetheless, the court noted that, in fact, Ms. Kabler remained in office as a holdover until Ms. Makosky was appointed on December 16, 1997, that there was some indication in the County Council's minutes that the appointment was to take effect January 1, 2003, and that, under the Charter, her term was to last for five years. From all of this, the court concluded:

> "[Ms. Makosky's term] did not commence earlier than December 16, 1997, first, because the position was then occupied by Carol Kabler, and second, because it was to be effective January 1, 1998, and for a term of five years. Her term ended on January 1, 2003, notwithstanding the letter to her erroneously indicating an earlier termination. If it ended prior to December 16, 2002, it would not satisfy the requirement of a five-year term specified in the Charter."

Upon that analysis, the court determined that, as Ms. Makosky remained in office until at least December 16, 2002, there was no vacancy to be filled prior to then and, accordingly, the County Council's action of November 26, 2002 was a nullity. Somewhat in conformance with that determination, the court entered a declaratory judgment that "Makosky continued in office as a member of the Commission until January 1, 2003" and that "the Council's appointment of Bryan as a member of the Commission was illegal, null and void." After Mr. Bryan dismissed ancillary claims, the court entered a final order, and Mr. Bryan noted an appeal. We granted *certiorari* prior to proceedings in the Court of Special Appeals.

## DISCUSSION

The resolution of this case is straightforward and flows from three self-evident and controlling principles: (1) an appointment cannot be made to a public office unless, at the time the appointment is to become effective, there is, or will be, a vacancy in that office; (2) absent some supervening Constitutional or statutory provision to the contrary, an appointing authority cannot validly make an appointment to a

public office unless the vacancy to be filled by that appointment will, with certainty, occur at a time when the appointing authority retains power to make the appointment; and (3) the County Charter, and not any subordinate documents, controls the terms of the members of the Planning and Zoning Commission.

The first of these principles, in addition to being self-evident, has, in fact, been previously declared by this Court. In *Goodman v. Clerk of Circuit Court for Prince George's County*, 291 Md. 325, 329, 435 A.2d 422, 424 (1981), we held:

> "While, as a rule, an appointment will be presumed to have been validly made in accordance with the law, once the power to appoint has been validly exercised, any subsequent appointment to the same office will be void unless the incumbent has been removed or the office has otherwise become vacant. [Citation omitted]. It is axiomatic that two persons cannot occupy the same office at the same time."

*See also Smoot v. Somerville*, 59 Md. 84 (1882); *State ex rel. Gahl v. Lutz*, 132 Ohio St. 466, 9 N.E.2d 288, 290 (1937) (" 'Where power has been given to appoint to an office and the same has been exercised, any subsequent appointment to the same office will be void unless the prior incumbent has been removed or the office has otherwise become vacant.' " (quoting Mecham, Public Offices and Officers, § 113, p. 46)).

We have not had occasion to opine on the second principle, which proceeds logically from the first, although it has long been established throughout the country. Courts have recognized, as a general rule, that it is permissible for an appointing authority to make appointments prospectively, *i.e.*, to announce and put in motion the appointment of a person to fill a prospective vacancy before the vacancy actually occurs, so long as the vacancy will, in fact, exist when the new appointment becomes effective. The relevant caveat to that general rule which, with certain limited exceptions, is equally well-recognized, is that the vacancy to be filled by the prospective appointment must be certain to exist while the appointing authority is still empowered to fill the vacancy, *i.e.*, a prospec-

tive appointment may not be made to fill a vacancy that is not certain to occur during the term of office of the appointing authority. The rationale most often expressed for that caveat is that an appointing authority may not usurp the prerogative of its successor by filling a vacancy that will not occur until the successor has taken office and, by virtue of that succession, has itself become vested with the power to make the appointment.

In *Mullinax v. Garrison*, 296 S.C. 370, 373 S.E.2d 471 (1988), the members of an appointing body whose terms were set to expire on November 13, 1988, planned to meet prior to that date to make an appointment to fill a vacancy that would not occur until January 1, 1989. The South Carolina Supreme Court reversed an order denying a petition to enjoin the body from so proceeding, holding:

> "As a general rule, appointments which fill a prospective vacancy in an office before the actual vacancy occurs are valid. [Citations omitted]. However, a legislative body may not usurp the rights of its successor by making a prospective appointment to fill an anticipated vacancy in an office where the appointee's term will not begin until after the legislative body's own term has expired."

*Id.* at 472.

Similar holdings, in a variety of different circumstances, have been made by courts throughout the country. *See People v. Fitzgerald*, 180 N.Y. 269, 73 N.E. 55, 56 (1905) ("[A]n appointment to office in anticipation of a vacancy therein is good only in case the officer making the appointment is still in office when the vacancy occurs."), confirmed in *People v. Dethloff*, 283 N.Y. 309, 28 N.E.2d 850, 852 (1940); *State ex rel. Norman v. Viebranz*, 19 Ohio St.3d 146, 483 N.E.2d 1176, 1178 (1985) ("Prospective appointments to office are generally deemed to be effective, with this exception: If the term of the appointing body or officer will expire prior to or at the same time that the vacancy will occur, then no power of prospective appointment exists."), citing *State ex rel. Morris v. Sullivan*, 81 Ohio St. 79, 90 N.E. 146 (1909) (stating that "[t]he well-

settled rule of the common law forbids that an officer clothed with power of appointment to a public office shall forestall the rights and prerogative of his successor by making a prospective appointment to fill an anticipated vacancy in an office the term of which cannot begin until after his own term and power to appoint have expired.").[2] McQuillin states the principle succinctly:

"Generally, appointments that fill a prospective vacancy in an office before the actual vacancy occurs are valid. However, a legislative body may not usurp the rights of its successor by making a prospective appointment to fill an anticipated vacancy in an office where the appointee's term will not begin until after the legislative body's own term has expired."

3 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS, § 12.100 (3rd ed., rev.vol.2001). We here confirm that principle.

The question then, as noted, is whether Ms. Makosky's term expired prior to noon on December 2, 2002, when the terms of the County Council members expired. The Circuit Court was ambiguous in its decision on this point. Relying on the fact that Ms. Makosky's predecessor, Ms. Kabler, held over in her position until December 16, 1997, the court seemed to conclude that Ms. Makosky's five-year term commenced at that point and thus ran until December 16, 2002. Alternatively, the

---

**2.** *See also State ex rel. Eberle v. Clark,* 87 Conn. 537, 89 A. 172, 176 (1913); *People v. Ward,* 107 Cal. 236, 40 P. 538 (1895), confirmed in *Morrison v. Michael,* 98 Cal.App.3d 507, 513, 159 Cal.Rptr. 568, 571 (Cal.Ct.App.1979); *Tappy v. State,* 82 So.2d 161, 166 (Fla.1955); *Hansen v. Town of Highland,* 237 Ind. 516, 147 N.E.2d 221, 226 (1958); *Dixon v. Caudill,* 143 Ky. 623, 136 S.W. 1043, 1045 (1911); *Harrod v. Hoover,* 209 Ky. 160, 272 S.W. 400, 401–02 (1925); *Ivy v. Lusk,* 11 La. Ann. 486 (La.1856); *Faciane v. Bosco,* 236 So.2d 601, 606 (La.App. 1970); *Pattangall, ex rel. Payson v. Gilman,* 115 Me. 344, 98 A. 936, 937 (1916); *State ex rel. Farrer v. McIntosh,* 109 Minn. 18, 122 N.W. 462, 464 (1909); *Yerger v. State ex rel. Brown,* 91 Miss. 802, 45 So. 849, 851 (1908); *Georgia v. Suruda,* 154 N.J.Super. 439, 381 A.2d 821, 826 (1977) and cases cited there; *Fowler v. Gillman,* 76 Utah 414, 290 P. 358, 363 (1930), all citing and confirming the rule, but some holding that, under the facts before them, it was not violated.

court relied on the statement of the County Manager, recorded in the minutes of the December 16, 1997, County Council meeting, that Ms. Makosky's appointment would be "effective" January 1, 1997, to conclude that her term might not have expired until January 1, 2003. Neither conclusion is valid.

The County Charter is the controlling document. It created the Planning and Zoning Commission, required that its five members be appointed by the County Council for terms of five years, directed that the terms of the five members first appointed were to be staggered, but provided no specific commencement or ending date for those terms. The holdover Council that took office in December, 1973, ignored the Charter mandate, for it made no appointments to the Commission, as required by §§ 404 and 906. The first effective appointments made pursuant to the Charter were those made on December 3, 1974 which, according to the minutes of that meeting, were "effective immediately."

■ The general rule, which we have followed, is that, if a law sets forth a date for the commencement of a term of office, the term commences on that date, regardless of when appointments are actually made or the appointees formally qualify. *See Dyer v. Bayne,* 54 Md. 87 (1880). Where, as here, the controlling law does not establish or even imply such a date, courts have reached different conclusions as to the commencement date, usually depending on the particular legal and factual setting. Some have looked to the date of appointment, others to the date the appointee formally qualifies. *See generally* 3 McQuillin, *supra,* § 12.99. *Compare People v. Hamrock,* 74 Colo. 411, 222 P. 391 (1924) and *Boyd v. Huntington,* 215 Cal. 473, 11 P.2d 383 (1932) (fixing commencement date as the date when the law creating the office took effect).

■ The problem with fixing one time or another, immutably and generically, is that situations may vary to the point of making the selected time inappropriate in the particular circumstance. Where the enabling statute that created the office is silent as to the commencement of the term, gives no indication as to the intent of the legislative body in that

regard, but, other than fixing the duration of the term, leaves it to an appointing authority to make the appointments, we think that the first and primary resort must be to the intent of the appointing authority, if one can be discerned. *See Attorney General, ex rel. Haight v. Love,* 39 N.J.L. 476 (N.J.1877) ("The beginning of a term of office ought not to be left to the will of the officer himself."); *Talmadge v. Cordell,* 167 Ga. 594, 146 S.E. 467, 471 (1928) ("Even in the absence of legislation fixing the beginning of the term, the appointing power is clothed with the power to fix the beginning of the term of the first appointee; and thereafter all subsequent terms are to conform to the beginning of the term of the first appointee.").

■ Here, such an intent is, indeed, discernible. The County Council made all of the initial appointments under the Charter on the same day—December 3, 1974—and declared that those appointments were effective immediately. There is no indication of an intent to delay the commencement of the term to any future date, either fixed or based on when the appointees formally qualified. Accordingly, those initial appointments necessarily established the actual terms as commencing on December 3, and as extending until midnight at the end of December 2 of the respective years following, as dictated by the initial staggered terms.

■ No subsequent pronouncements by Council members, Commission members, or administrative personnel regarding when terms began or ended can affect the termination dates unalterably set by application of the Charter to the terms initially fixed by the first appointments. Nor can the fact that Ms. Kabler held over until December 16 change the beginning or ending date of the term. Her term expired at midnight on December 2–3, and, at that point, there was a legal vacancy. *See State v. Amos,* 101 Fla. 114, 133 So. 623, 625 (1931). Ms. Makosky's appointment to fill that vacancy was for the unexpired term of five years commencing December 3, 1997, and extending until midnight separating December 2–3, 2002. As the terms of the 1998–2002 County Council expired at noon on December 2, 2002, and as Ms. Makosky's term extended until

midnight, there was no vacancy for that Council to fill prior to the expiration of their respective terms. It is for that reason that the purported appointment of Mr. Bryan was a nullity.

JUDGMENT OF CIRCUIT COURT FOR TALBOT COUNTY VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO ENTER NEW DECLARATORY JUDGMENT IN CONFORMANCE WITH THIS OPINION; COSTS TO BE PAID BY APPELLANT.